340 So.2d 600 (1976)
BOARD OF COMMISSIONERS OF the LAFOURCHE BASIN LEVEE DISTRICT
v.
BOARD OF COMMISSIONERS OF ATCHAFALAYA BASIN LEVEE DISTRICT.
No. 10946.
Court of Appeal of Louisiana, First Circuit.
November 15, 1976.
*601 Joseph W. Cole, Jr., Port Allen, for defendant and appellant.
Simmons & Savoie, by Felix H. Savoie, Jr., Napoleonville, for plaintiff and appellee.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
LOTTINGER, Judge.
This is a suit seeking the issuance of a writ of mandamus to compel the Board of Commissioners for the Atchafalaya Basin Levee District to pay its prorata share to the Lafourche Basin Levee District for the maintenance of a canal located in Assumption Parish. From a judgment granting the issuance of the writ, defendant has appealed.
By Act 9 of 1900, the Louisiana Legislature authorized the Boards of Commissioners of the Atchafalaya Basin and Lafourche Basin Levee Districts to place locks at the head of Bayou Lafourche, and the expense of such works was to be shared equally by each Board. This Act of the Legislature further provided that all matters pertaining to the construction, maintenance, and management of said locks was to be considered by the two Boards meeting in joint session, but voting separately, and in case of a tie vote, the governor would decide the issue. The express purpose of this Act was to close Bayou Lafourche to the uncontrolled flow of the Mississippi River and thus reduce the drain on the state's fisc in maintaining the levees along Bayou Lafourche.
Two years later, in 1902, the Legislature enacted Act 84 which authorized the two Boards to place a temporary dam at the head of Bayou Lafourche pending the construction of the locks. The legislature required that from the time of the placing of the dam to the completion of the locks the Boards would maintain a depth of not less than 6 feet by not less than 60 feet in width of fresh water throughout Bayou Lafourche either by supply of river water at Donaldsonville or by lake connection below the lower line of the Parish of Assumption, and that in order to carry out the purpose of the Act the Boards could dredge the bayou, construct pumps, syphons, build dams and locks and operate same, and do other necessary acts. It is apparent that even though the damming of Bayou Lafourche at its headwater was being allowed, and the flow of water from the Mississippi River was to be completely curtailed temporarily, a channel for navigation was mandated by the legislature.
In 1904, by Act 36, the legislature amended and reenacted a portion of Act 84 of 1902 to provide that the lake connection for the supply of fresh water could be made at any point of Bayou Lafourche, and that in order to carry out the purpose of the Act the Boards could, in addition to what was authorized by Act 84 of 1902, dig canals. Both Acts provided that the works specified would be carried out and paid for in accordance with Act 9 of 1900.
The two Levee Boards acting jointly in an attempt to maintain a flow of fresh water throughout Bayou Lafourche dredged a canal from Bayou Lafourche to Lake Verret utilizing an old drainage district canal for a portion of its length. From its dredging until August 1, 1972, both Boards acting jointly and in accordance with the above referred to two Acts of the Legislature shared equally the cost of maintenance of the canal.
In 1950 the legislature enacted Act 113 which created the Bayou Lafourche Fresh Water District comprising portions of the parishes of Ascension, Assumption and Lafourche, *602 for the express purpose of furnishing fresh water from the Mississippi River to the incorporated villages, towns and cities along Bayou Lafourche and within or adjacent to the boundaries of said district. It is obvious of course that the purpose of this Act of the Legislature was to provide fresh water for drinking purposes rather than for the maintenance of a channel for navigation in Bayou Lafourche.
In 1952 the legislature adopted Act 192 which allowed the Bayou Lafourche Fresh Water District to construct, maintain and operate a pumping facility at the head of Bayou Lafourche in the vicinity of Donaldsonville for the purpose of providing fresh water from the Mississippi River to Bayou Lafourche. At the same time the legislature also adopted Act 191 of 1952 which authorized the Boards of Commissioners for the Atchafalaya Basin and the Lafourche Basin Levee Districts to contribute from funds available the sums of $250,000.00 each for the purpose of defraying the expenses of the construction of a pumping facility as provided for in Act 192, and upon paying said sums of money, both of the levee districts would be fully relieved of any further obligation to provide a fresh water supply for Bayou Lafourche and would be particularly relieved of the obligations imposed by those portions of Acts No. 9 of 1900, No. 8 of 1902, No. 84 of 1902 and No. 36 of 1904, which required that the levee boards maintain a supply of fresh water in said bayou.
It is apparent from the record that for many years both the Atchafalaya Basin Levee District and the Lafourche Basin Levee District jointly maintained the canal in question that had been dredged, and meeting jointly they would authorize the maintenance of this canal. Apparently the Lafourche Basin Levee District would out of its funds pay all the bills for the maintenance of the canal, and the Atchafalaya Basin Levee District would reimburse the Lafourche Basin Levee District one half of the maintenance cost. At the last joint meeting of the two levee districts at which a quorum was present, on July 14, 1966, the following resolution was adopted, to wit:
"Be it resolved that the Atchafalaya Board cooperate to the full extent in cleaning out Cancienne Canal, that effective July 1, 1966 a $10.00 a month raise from each Board be given to the three employees of the joint organization working on Cancienne Canal but that the foregoing be held in abeyance until such time as the Attorney General has ruled formally on the legality of the joint organization expenditures on Cancienne Canal. That until such time as the Attorney General rules, the joint organization continue its present activities."
There were no other meetings held after this meeting, however, a meeting was called for February of 1973, but a quorum was never obtained.
The Lafourche Basin Levee District continued under the former practice of paying the expenses for the maintenance of the Cancienne Canal, and submitting one half of the bills to the Atchafalaya Basin Levee District for reimbursement. However, on August 1, 1972, the Atchafalaya Basin Levee District refused to pay any further reimbursement to the Lafourche Basin Levee District for expenditures on the Cancienne Canal, and thus this suit was filed.
The defendant-appellant argues that a serious legal question has been raised as to the propriety of its continuing to expend tax monies for the maintenance of the Cancienne Canal, and thus any duty imposed upon the Board of Commissioners of the Atchafalaya Basin Levee District is not a clear ministerial duty required by law, and therefore mandamus will not lie for a resolution of the problem.
The question therefore before the Court under the facts as presented is whether mandamus is the proper remedy?
A writ of mandamus is issued to compel the performance of a ministerial duty required by law, and only in those cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. LSA-C.C.P. arts. 3862 & 3863.
*603 Plaintiff is seeking to collect from the defendant money that it claims the defendant owes it. Normally, one would file an ordinary suit for the collection of money due. Mandamus is an extraordinary remedy which is used sparingly by the courts to compel something that is clearly provided by law, but only where it is the only available remedy, or where the delay occasioned by the use of any other remedy would cause an injustice.
"Mandamus will not lie to enforce payment of a claim against a governmental body where there is another adequate remedy; and it is generally held that mandamus is not the proper remedy to enforce a claim which has been presented to the proper officers and disallowed by them where there is an adequate remedy by action." 55 C.J.S. Mandamus § 17.
In State v. Police Jury of Rapides Parish, 131 So.2d 623 (La.App. 3rd Cir. 1961) rehearing denied (1961), wherein, the bonding company sought a writ of mandamus against the Rapides Parish Police Jury commanding that they pay to it the sum of $2,500.00 as the refund of an appearance bond which had been forfeited due to the failure of an accused to appear in court, after an acting governor of the state formally remitted the forfeiture, our Brethren on the Third Circuit in upholding the denial of the use of mandamus said:
"In the instant suit relator clearly has a right to proceed by ordinary process, and there is nothing in the pleadings or in the arguments advanced by counsel to indicate that the `slowness of ordinary legal forms is likely to produce such a delay that the public good and the administration of justice will suffer from it.'"
The plaintiff in the matter before this Court could have just as easily used ordinary process in attempting to collect the money which it alleges is due it, and there is no showing to this Court that an injustice will be done by denying the use of mandamus.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is reversed, and IT IS ORDERED, ADJUDGED AND DECREED that plaintiff's application for a writ of mandamus be and the same is denied. To the extent permitted by law, all costs of this appeal are to be paid by plaintiff-appellant.
REVERSED AND RENDERED.