645 So.2d 1174 (1994)
The TIMES-PICAYUNE PUBLISHING COMPANY, et al.
v.
Jon D. JOHNSON, State Senator, Emile "Peppi" Bruneau, Jr., State Representative; Naomi White-Warren Farve, State Representative; Garey J. Forster, State Representative; Arthur A. Morrell, State Representative; and Edwin Murray, State Representative.
No. 94-CA-0790.
Court of Appeal of Louisiana, Fourth Circuit.
October 3, 1994.
Rehearing Denied December 13, 1994.[*]
*1175 Jack M. Weiss, III, Mark B. Holton, Stone, Pigman, Walther, Wittman & Hutchinson, New Orleans, for Times-Picayune Pub. Corp. and Peter Nicholas.
Lewis O. Unglesby, Unglesby & Koch, Baton Rouge, for Samuel B. Nunez, Jr., individually and as President of the La. State Senate, and the La. State Senate.
Alfred W. Speer, II, Baton Rouge, and Charles Emile Bruneau, Jr., New Orleans, for Emile Bruneau, Jr., Naomi White-Warren Farve, Garey Forster, Arthur Morrell, and Edwin Murray.
Before SCHOTT, C.J., and CIACCIO and WARD, JJ.
WARD, Judge.
The Times-Picayune and its reporter, Peter Nicholas, requested of each Louisiana legislator an opportunity to view and copy their legislative scholarship nominations to Tulane University. After the plaintiffs failed to receive the cooperation and disclosure they sought, they filed this lawsuit for a declaratory judgment and mandamus, claiming Louisiana's Public Records Act gives them the right to view and copy those documents, and that these nominating forms executed by elected state representatives are public records within the meaning of that Act.
The defendant legislators herein have resisted plaintiffs' demands, mainly because they believe the scholarship records are not public documents, but also because they claim they are not now custodians of those records, having sent them to Tulane University.
The trial court granted to plaintiffs the relief they sought; finding the nominating forms were public records within the meaning of the act and that plaintiffs were entitled to inspect and copy them. The trial court then ordered the defendant legislators to provide to the plaintiffs all nominating forms whether in their possession or in the possession of Tulane University, and further enjoined non-performance of the order. Additionally, the trial court awarded attorneys' fees to plaintiffs as the successful litigants, in accord with the Public Records Act.
Many issues were raised by defendants, but we will discuss only those with apparent merit. (1) Are the nominating forms public records within the meaning of the Public Records Act? (2) Are the legislators custodians of those nominating forms, so that they must retain them and make them available for inspection or copying? (3) Does mandamus lie to require legislators to retrieve the nominating forms from Tulane University and then to maintain them as custodians of public records? (4) Are attorneys' fees due to the Times-Picayune?
First, it is important to emphasize that this is a suit for a declaratory judgment in which the Times-Picayune asks adjudication of rights and duties between the Times-Picayune and legislators. Therefore we will first consider the rights and duties of these parties under the Public Records Act.
The crucial issue is whether the nominating forms are public records within the meaning of Louisiana's Public Records Act, La.R.S. 44:1 et seq. We agree with the trial court, they are.
The legislative scholarships provided by Tulane to nominees of legislators arise from an agreement between the Board of Administrators of Tulane University and the State of Louisiana whereby the Board received public property and exemptions from taxes in exchange for granting scholarships to nominees of members of Louisiana's legislature. This agreement became law. Act 43 of 1884, now La.R.S. 17:6, recently approved by Article VIII, Section 14, of the Louisiana Constitution of 1974.
*1176 The Public Records Act, La.R.S. 44:1 et seq., defines "Public Record" in Section A(1) in extremely broad terms. Among other things public records are "records ... prepared for use in the conduct, transaction or performance of any duty ... performed by or under the authority of the constitution or laws of this state...." La.R.S. 44:1A(2). One of the purposes of the Public Records Act is to insure that public business is subject to public scrutiny. The contract between the State and Tulane, the manner of its execution, the contractual beneficiaries, and all other related matters concern public business. As such, they are subject to public scrutiny; and we readily conclude that all records related to the contract and the giving of scholarships fall within the broad definition of public records, including the nominating forms herein sought by plaintiffs.
The next issue raises the question of who is a custodian within the meaning of La.R.S. 44:1A(3). We hold it is not limited to those persons or institutions that have physical custody, because we find who has "control" is also critical.
(3) As used in this Chapter, the word "custodian" means the public official or head of any public body having custody or control of a public record, or a representative specifically authorized by him to respond to requests to inspect any such records.
Some of the defendant legislators have retained physical custody. In those cases we have no difficulty because they are custodians and the only issue is whether these are public records. We have decided that they are within the meaning of the Public Records Act, and as custodians they must now produce them.
In other cases, however, the defendant legislator did not maintain the records, or if he did, he has since sent them to Tulane University which has agreed to maintain them to accommodate the legislators. Testimony during trial clearly indicated that Tulane University considers itself as a representative of each member of the legislature in so far as it has the physical custody of the members' nominating forms, and Tulane describes itself as an agent of the members of the legislature, willing to make public the nominating forms if authorized to do so. In these situations Tulane has physical custody. We nevertheless find that the legislator is a custodian because by law the legislator must maintain those records for a period of three years. We therefore conclude that because each member of the legislature has "control" of those nominating forms, they are custodians within the meaning of R.S. 44:1A(3).
Although La.R.S. 44:1A(3), quoted above, permits transfer of the physical custody to another, this does not mean legislators can avoid their responsibility to control their public records merely by transferring physical custody to another. It means just the opposite. They can only transfer physical custody to a representative who will respond to requests for inspection. Custodians of public records [including legislators who are custodians] do not have authority to transfer custody of public records to another so as to insulate those records from public inspection. We do not mean to infer that this is the intention of the defendants, but it is the practical situation unless the legislators authorized Tulane to respond to requests for inspectionas they must under the statute above.
Both in oral argument and in brief the defendants disavow any interest or control over the records. They repeatedly emphasize that Tulane is custodian of the records, and that Tulane can do with them as they please. Tulane, however, is not a "public official or head of any public body" within the meaning of La.R.S. 44:1A(3). It is obvious that if the legislators are custodians, as we have held, then Tulane is only a representative of the legislators. Since under the law these legislators could not transfer custody of the records to Tulane without giving it the appropriate authority, and since the legislators herein have repeatedly disavowed any interest in these records, we are justified in concluding that when the legislators as custodians transferred physical custody to Tulane, they tacitly authorized Tulane to respond to requests to make them public in accord with La.R.S. 44:1A(3), supra.
*1177 Turning to the mandamus, it is important to remember that this is a suit for a declaratory judgment, asking the court to adjudicate the rights and duties between the Times-Picayune and the legislators, not the Times-Picayune and Tulane. Since by this declaratory judgment we are only now rendering a definitive statement of the rights and duties of the parties, the issuance of a mandamus is premature for there is no indication whatsoever that these legislators would not accept a final declaratory judgment as a final adjudication with which they would certainly comply. For this reason, we reverse the issuance of the mandamus.
Since the mandamus was improvidently issued we also believe the Times-Picayune has not prevailed fully in its demand, so as to warrant an award of attorneys' fees. And while it would have been infinitely better to have Tulane joined as a party, the defect is not fatal and remand is not required for a complete adjudication of the suit for a declaratory judgment. This is exactly what the trial court did, and without objection by the legislators. And when in that declaratory judgment the trial court declared the records were public, the legislators were custodians, and the records in their possession had to be made available, he did nothing more than that requested, and Tulane certainly did not have to be made a party to the declaratory judgment suit.
We therefore reverse the judgment of the trial court insofar as it issued a mandamus and casts the defendants in judgment for attorneys fees. We affirm in all other respects.
REVERSED IN PART; AMENDED IN PART; AND, AS AMENDED, AFFIRMED.
SCHOTT, Chief Judge, concurring in denial of all rehearing applications:
From the response by the Times-Picayune to Rep. Bruneau's application it appears that the Picayune has misrepresented this court's original opinion.
In our original opinion we clearly reversed the trial court's issuance of a mandamus and left only the declaratory judgment. I signed this opinion among other reasons because Tulane was not a party to the proceedings and a judgment could not affect papers in Tulane's possession.
The Picayune has chosen not to make Tulane a party to these proceedings. If Tulane has valid reasons for refusing to disclose these forms to the Picayune it may assert them. The Picayune's present remedy is to make a demand on Tulane to produce records in its custody, but not to make such a demand on Rep. Bruneau or any other party.
NOTES
[*] Schott, C.J., concurred in denial of rehearing with reasons.