695 So.2d 1126 (1997)
The ALLIANCE FOR AFFORDABLE ENERGY and Gary L. Groesch
v.
Jacquelyn M. FRICK and the City of New Orleans.
No. 96-CA-1763.
Court of Appeal of Louisiana, Fourth Circuit.
May 28, 1997.
*1129 David Maldow, Student Attorney, Thomas Milliner, Supervising Attorney, Tulane Environmental Law Clinic, New Orleans, for Alliance for Affordable Energy and Gary L. Groesch.
Deborah L. Wilson, Chief Deputy City Attorney, Avis Marie Russell, City Attorney, New Orleans, for City of New Orleans.
Before BARRY, PLOTKIN and MURRAY, JJ.
BARRY, Judge.
The City of New Orleans and the Director of the City Council Utilities Regulatory Office appeal a judgment which ordered them to produce documents and to amend their responses to requests under the Louisiana Public Records Law, La. R.S. 44:1 et seq.

Facts
On January 29, 1996 the Alliance for Affordable Energy and its Executive Director Gary Groesch (collectively Alliance) made a written request for records to Jacquelyn Frick, the Director of the Utilities Office. The Alliance requested thirty items related to the City Council's regulation of public utilities, including correspondence, resolutions, documentation, and information pertaining to costs associated with NOPSI's and LP & L's implementation of the Least Cost Integrated Resource Plan.[1]
Frick responded that twenty items (Nos. 1-7, 10, 11, 14, 15, 18-24, 26 and 28) were not in her possession; six items (Nos. 8, 9, 12, 13, 16 and 17) were not in her possession, but "to the extent that some form of such information may be in (her) possession ... it would be contained in a report" that was provided to Alliance; three items (Nos. 25, 27 and 30) could be made available through an appointment "to the extent that such documents are in (her) possession;" and request 29 was "much too ambiguous, incomprehensible and non-specific."
On February 29, 1996 the Alliance requested Frick provide documents concerning contractors' and attorney fees and costs associated with the City Council's regulatory authority. That request was amended March 4, 1996 to clarify the name of a law firm.
Frick responded that some of the requested documents could be made available. As to others, Frick specified the costs for copies and temporary employees who would separate nonpublic documents and she demanded advance payment. The City Attorney's Office later reasserted the demand for advance payment and advised the Alliance that "(s)ome of the documents requested are not maintained in the manner in which you have requested them or are not kept in a manner in which it would be appropriate for disclosure to the public." That letter provided no further explanation.
On March 27, 1996 and April 9, 1996 the Alliance requested two letters with enclosures that were sent by the City to NOPSI concerning invoices for services rendered by consultants and attorneys in connection with utility rate matters. The City asserted the attorney/client privilege as to descriptions of work and did not provide the documents.
On April 18, 1996 the Alliance requested all correspondence and documents related to Council Resolutions R-93-430, R-94-373, and R-96-58. That information allegedly included correspondence between NOPSI and/or LP & L and the utility consultants who advised the Council on the resolutions. Frick responded through the City Attorney's Office that she was not in possession of those documents. No explanation was given.
*1130 On May 2, 1996 the Alliance attempted to schedule an appointment to review some previously requested records and copy them with their personal copier. The City refused to allow a personal copier and demanded payment for copies.
The Alliance and Groesch filed a petition for a declaratory judgment and writ of mandamus. They requested a judgment holding that the requested documents are public records in the custody of Frick and subject to La. R.S. 44:1 et seq. They sought the mandamus to compel Frick to produce the documents or supplement responses to explain why the documents are not in Frick's custody.
The hearing on a rule to show cause was set for May 24, 1996, but was continued at the City's and Frick's request until June 5, 1996. The matter was submitted on the pleadings and affidavits.
The trial court deferred ruling on the declaratory judgment, granted the mandamus and ordered 1) that defendants modify their response to the Alliance's January 29, 1996 requests Nos. 1, 3-5, and 24 and their response to the Alliance's April 18, 1996 request by explaining why the documents are not in Frick's custody, when the documents were taken from her custody, and the present location of the requested records, and to provide detailed information to facilitate the Alliance's exercise of its right to inspect the records; 2) that defendants produce records that were requested February 29, March 4, March 27, and April 9, 1996; and 3) that defendants permit the Alliance to copy the records during normal business hours in a non-discriminatory manner and free of charge.

Writ of Mandamus
The City and Frick argue that mandamus was improper because ordinary relief was available through a declaratory judgment, and an ordinary proceeding would not cause undue delay.
The public's right to public records is fundamental and guaranteed by La. Const. art. 12, § 3 which provides that "(n)o person shall be denied the right to ... examine public documents, except in cases established by law." Title Research Corp. v. Rausch, 450 So.2d 933, 936 (La.1984). La. R.S. 44:32(A) requires the custodian to "present any public record to any person of the age of majority who so requests" and demonstrates the legislature's intent to provide access in as unrestricted a manner as possible. Id. at 937. See Treadway v. Jones, 583 So.2d 119, 121 (La.App. 4th Cir.1991).
A "custodian" is
the public official or head of any public body having custody or control of a public record, or a representative specifically authorized by him to respond to requests to inspect any such public records.
La. R.S. 44:1(A)(3).
A person denied access to public records may institute an action seeking a mandamus directing the custodian to produce the record(s) or to enjoin the custodian from withholding the record(s). Ferguson v. Stephens, 623 So.2d 711, 715 (La.App. 4th Cir. 1993). La. C.C.P. art. 3862 appears in Book VII Title III ("Extraordinary Remedies") and generally governs the issuance of mandamus:
A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice;....
However, the Public Records Law provides that an aggrieved person may seek relief by mandamus or a declaratory judgment, and a suit to enforce that law shall be tried by preference in a summary manner. La. R.S. 44:35 sets forth the procedure to enforce the Public Records Law:
A. Any person who has been denied the right to inspect or copy a record under the provisions of this Chapter, either by a final determination of the custodian or by the passage of five days ... from the date of his request without receiving a final determination in writing by the custodian, may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief ....
C. Any suit brought in any court of original jurisdiction to enforce the provisions *1131 of this Chapter shall be tried by preference and in a summary manner. [Emphasis added.]
Mandamus is an alternative remedy, and the Public Records Law does not require a plaintiff to obtain a declaratory judgment before seeking a mandamus. See La. R.S. 44:35(A). See Dutton v. Guste, 395 So.2d 683 (La.1981), a suit for mandamus in which the court determined whether requested documents were "public records" subject to disclosure; Treadway v. Jones, supra, in which the plaintiff filed a suit for a declaratory judgment and mandamus, or alternatively an injunction prohibiting the defendant from withholding written proposals submitted by private entities which were seeking a management contract with the Housing Authority of New Orleans. The trial court denied relief, but this Court reversed and issued a mandamus.
The cases cited by the City and Frick are distinguishable because they were not based on the Public Records statute. See Felix v. St. Paul Fire & Marine Insurance Co., 477 So.2d 676 (La.1985); Louisiana Dept. of Treasury, Board of Trustees of State Employees Group Benefits Program v. Williams, 451 So.2d 1308 (La.App. 1st Cir. 1984); Board of Commissioners of Lafourche Basin Levee District v. Board of Commissioners of Atchafalaya Basin Levee District, 340 So.2d 600 (La.App. 1st Cir.1976).
Frick and the City argue that a mandamus is premature absent evidence that the custodian would not comply with a declaratory judgment defining the rights and duties of the parties, citing Times-Picayune Publishing Co. v. Johnson, 94-0790 (La.App. 4 Cir. 10/3/94), 645 So.2d 1174, writ not considered 95-0212 (La.3/17/95), 651 So.2d 259, writ den. 95-0083 (La.3/17/95), 651 So.2d 260.
In Times-Picayune its reporter requested from each state legislator the records of legislative scholarship nominations to Tulane University. Some legislators refused and the Times-Picayune filed suit for a declaratory judgment and mandamus. The trial court held that the nominating forms were public records and ordered their production. The primary issue on appeal was the declaratory judgment establishing the records as public and the rights and duties between the parties. This Court affirmed that the nominating forms were public records, then held that certain legislators for whom Tulane University maintained the records were "custodians" and required to comply. Because those issues had not been previously decided this Court held that the mandamus was premature.
Turning to the mandamus, it is important to remember that this is a suit for a declaratory judgment, asking the court to adjudicate the rights and duties between the Times-Picayune and the legislators.... Since by this declaratory judgment we are only now rendering a definitive statement of the rights and duties of the parties, the issuance of a mandamus is premature for there is no indication whatsoever that these legislators would not accept a final declaratory judgment as a final adjudication with which they would certainly comply. For this reason, we reverse the issuance of the mandamus.
Id. at 1177.
The City Council Utilities Regulatory Office, as a municipal government office, is a public body whose records are subject to disclosure. See La. R.S. 44:1(A)(1). The City and Frick claim that certain invoices, receipts and time sheets contain nonpublic information; they do not deny that the documents otherwise fall under La. R.S. 44:1, i.e., that the records have been used,
or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ... order of any public body....
La. R.S. 44:1(A)(2).
Further, the City and Frick assert that they do not possess many of the requested records, but they do not deny that they control the records in their possession. The records that the trial court ordered produced were not those for which Frick and the City disclaimed possession. The trial court ordered Frick and the City to supplement their *1132 responses in which they denied possessing certain records and the court ordered production of other records.
A custodian of public records has a statutory duty to provide immediate access to records that are available. La. R.S. 44:31 and 32; Treadway v. Jones, 583 So.2d 119, 121 (La.App. 4th Cir.1991). Access to such records can be denied only when a law specifically provides otherwise. Treadway v. Jones, 583 So.2d at 121. The custodian may separate the nonpublic record and make the public record available for examination. La. R.S. 44:32(B). In any suit under the Public Records Law the custodian must support his action. La. R.S. 44:35(B).
The rights and duties of the Alliance and the City Council Utilities Regulatory Office are established. Whether an exemption from disclosure exists (and thus whether mandamus is proper) may be determined in the mandamus proceeding through a contradictory hearing and does not require a prior declaratory judgment. See La. C.C.P. art. 3865 which provides that in a mandamus proceeding the court shall issue an alternative writ directing the defendant to perform the act demanded or to show cause to the contrary. See also Marler v. Reed, 93-1772 (La.App. 1 Cir. 6/24/94), 638 So.2d 1164, which held that the Public Records Act and Code of Civil Procedure articles governing mandamus envision a contradictory hearing to determine whether the requested documents are public records.
The request for a mandamus is not premature.

Custody and Control
The City and Frick assert that the duty to produce the documents is not purely ministerial because the City does not possess all of the records, and therefore, mandamus is improper. They argue that they cannot produce records which they do not have. That argument is relevant to those items that were the subject of the trial court's judgment and which Frick denied possessing. Frick claimed that she did not possess item Nos. 1, 3, 4, 5 and 24 in the January 29, 1996 request or the items in the April 18, 1996 request. Frick does not deny that the City Council Utilities Regulatory Office possesses the remaining documents which the trial court ordered her to produce.
The court ordered the City and Frick to modify their written responses to comply with La. R.S. 44:34, but did not order production of documents which Frick claimed were not in her custody.
La. R.S. 44:34 prescribes the response when the person does not have custody of the records.
If any public record applied for by any authorized person is not in the custody or control of the person to whom the application is made, such person shall promptly certify this in writing to the applicant, and shall in the certificate state in detail to the best of his knowledge and belief, the reason for the absence of the record from his custody or control, its location, what person then has custody of the record and the manner and method in which, and the exact time at which it was taken from his custody or control. He shall include in the certificate ample and detailed answers to inquiries of the applicant which may facilitate the exercise of the right granted by this Chapter.
Frick and the City maintain that the enforcement provision of the Public Records Law, La. R.S. 44:35, presupposes that the records are located in the custodian's office, citing Revere v. Taylor, 613 So.2d 738 (La. App. 4th Cir.), writ den. 615 So.2d 332 (La.1993). They argue that mandamus is improper because the records are not in Frick's physical possession. That argument equates physical possession with control and has no merit.
In Revere, a convicted felon incarcerated in Angola requested documents from the New Orleans Police Department in connection with a 1987 homicide. The Department notified the defendant that the requested documents could not be found and the item numbers furnished by the applicant were issued by the St. Tammany sheriff's office who should be contacted. That suggested the St. Tammany sheriff's office, not the New Orleans Police Department, was the custodian.
*1133 This Court held that the mandamus was properly denied.
Frick advised the Alliance that she did not possess certain documents, but did not certify that another person was the custodian of those records.
The custodian may not avoid its responsibility to control public records by transferring physical possession to another. In Times-Picayune Publishing Co. v. Johnson, 645 So.2d 1174, the defendant legislators argued that they did not have custody of the requested records because they had transferred possession to Tulane University. This Court rejected that argument because the legislators were required by law to maintain the records for three years and therefore had "control" of the documents. Moreover,
Although La. R.S. 44:1(A)(3) ... permits transfer of the physical custody to another, this does not mean legislators can avoid their responsibility to control their public records merely by transferring physical custody to another. [Emphasis in original.]
Id. at 1176.
Citing Common Cause v. Morial, 506 So.2d 167 (La.App. 4th Cir.), writ den. 512 So.2d 458 (La.1987), Frick and the City contend that they fulfilled their duty to the Alliance by advising that they did not have the requested documents. In Common Cause v. Morial, the Mayor's office certified to the plaintiff "as required by La. R.S. 44:34" that neither the Mayor nor the Director of Public Information had possession of the requested record (a tape) and they were unaware of its existence. Id. at 169.
Frick's response that "the requested documents are not in (her) possession" does not comply with § 34. Frick did not certify that she is not in "custody or control" of the records as defined by La. R.S. 44:1(A)(3), state the reason for the absence of the records, provide the location of the documents, identify the person who has custody or control, or state when and how that person gained control. Frick did not include "ample and detailed answers ... which may facilitate" the Alliance's exercise of its rights under the Public Records Law. La. R.S. 44:34.
The trial court properly ordered Frick to supplement those responses to comply with § 34.

Privileged Information
Frick and the City assert that several records are subject to the attorney-client privilege and exempt from the Public Records Law. They also allege that the records contain private information and maintain that the custodian may separate and withhold the nonpublic information under La. R.S. 44:32(B). That argument pertains to records which the Alliance requested on February 29, March 4, March 27, and April 9, 1996, and which the trial court ordered Frick and the City to produce.
On February 29, 1996 the Alliance requested 1) the City Council resolution linking the hourly rates paid to local/minority counsel to the rates paid to out-of-town counsel; 2) documentation authorizing the hourly rates paid to attorneys and consultants; 3) documentation of money paid to attorneys and consultants relating to the City Council's regulatory authority; 4) attorney and consultant contracts; 5) records of expenditures from the City's general fund to attorneys and consultants; and 6) correspondence from the City to NOPSI, LP & L, or Entergy Corporation concerning attorney and consultant costs associated with the City Council's regulatory authority. That request was amended on March 4, 1996 to clarify the name of one law firm.
Frick responded that she was unaware of a City Council resolution linking the hourly rates of local and out-of-town counsel and documentation authorizing hourly rates of attorneys and consultants (request Nos. 1 and 2), and that the records requested in Nos. 4 and 6 could be made available to the Alliance. As to documentation of money paid to attorneys and consultants relating to the City Council's regulatory authority (No. 3) and records of expenditures from the City's general fund to attorneys and consultants (No. 5), Frick responded that the records "contain information that is privileged and confidential, i.e., credit card numbers on receipts, *1134 telephone calls on telephone bills not reimbursed by the City." She stated that the City could contract with a temporary agency at $6.99 per hour (plus copy costs) to separate the privileged information. She advised the Alliance that advance partial payment was required before the records would be made available.
On March 27 and April 9, 1996 the Alliance requested two letters from the City to NOPSI, together with attachments of invoices for services rendered by attorneys and consultants.[2] The City Attorney's office responded on behalf of the Utilities Regulatory Office that the invoices were protected by the attorney-client privilege because they described the work performed.
The Alliance argues that the attorney-client privilege does not apply to records generated by or related to non-attorneys. The merit of that argument is self-evident: by definition, the attorney-client privilege does not encompass communications or records unrelated to the attorney-client relationship.
The Public Records Law provides an illustrative list of documents which are exempt from disclosure. See La. R.S. 44:2 et seq. See also Dutton v. Guste, 395 So.2d 683, 685 (La.1981), which recognizes statutory exemptions "which by their language exempt certain types of records from the Public Records Law."
The Public Records Law contains a work product exemption for
any writings, records or other accounts that reflect the mental impressions, conclusions, opinions or theories of an attorney or an expert, obtained or prepared in anticipation of litigation or in preparation for trial.
Acts 1978, No. 686 § 2.
In Dutton v. Guste, supra, an Indiana resident sued the Louisiana Attorney General seeking a mandamus ordering documents related to a settlement between the State and a group of architects and engineers over the design or construction of the Superdome. The State was involved in pending litigation with contractors of the Superdome and claimed that the requested documents were privileged. The trial court held that the documents were not subject to disclosure, and the appellate court affirmed. The Supreme Court reversed, holding that the documents were non-exempt public records and decreeing the writ of mandamus peremptory.
First, we conclude that the documents... are public records.... Having so concluded, the only possible exception provided by law called to our attention is that established by Section 2 of Acts 1978, No. 686.... [Emphasis added.]
Dutton v. Guste, 395 So.2d at 685.
Because the documents in Dutton did not reflect the mental impressions, conclusions, opinions or theories of the attorneys relative to the merits of that case, and were not prepared in anticipation of litigation, they were not exempt.
Notably, Dutton did not hold that the work product rule of La. C.C.P. art. 1424 constitutes an exemption to the Public Records Law.[3] The majority did not discuss Art. 1424; the concurrence considered the article but noted that the Public Records Law controls, not the Code of Civil Procedure. See Dutton v. Guste, 395 So.2d at 686 (Calogero, J., concurring).
Frick and the City contend that La. C.E. art. 506 exempts the records from disclosure. Art. 506(B) provides a testimonial privilege against disclosure of
a confidential communication, whether oral, written, or otherwise, made for the *1135 purpose of facilitating the rendition of professional legal services to the client, ... when the communication is:
(1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer.
"Client" includes a public organization or entity to whom professional legal services are rendered by a lawyer. La. C.E. art. 506(A)(1). Although Art. 506 was enacted after the Public Records Law, the latter is the more direct expression of the legislature regarding disclosure of public records than the evidence article on testimonial privileges. We conclude the Public Records Law applies. See Dutton v. Guste, 395 So.2d at 686 (Calogero, J., concurring).
Frick and the City do not allege that the records contain the "mental impressions, conclusions, opinions or theories of an attorney or an expert, obtained or prepared in anticipation of litigation or in preparation for trial." Acts 1978, No. 686 § 2. We have no basis to hold that the records which the Alliance requested on February 29, March 4, March 17, and April 9, 1996 are exempt from disclosure because of the attorney-client privilege.
Frick and the City claim that some of the documents contain confidential information which Frick is entitled to segregate prior to disclosure. See La. R.S. 44:32(B). Although not specified in the brief, we assume Frick and the City are referring to the Alliance's February 29, 1996 request for "all invoices, receipts, time sheets and other cost documentation which show or support activities devoted to the City Council's regulatory authority ... submitted by (the consultants and attorneys listed)." Frick's response to the Alliance stated that the records contained confidential credit card numbers and "telephone calls."
Although not argued by the defendants, that assertion raises the constitutional interest of right to privacy. La. Const. Art. 1, § 5 provides:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy....
The determination of whether a document containing private information should be exempt from disclosure involves competing constitutional interests of right of access to public records and right to privacy. See Webb v. City of Shreveport, 371 So.2d 316, 319 (La.App. 2d Cir.), writ den. 374 So.2d 657 (La.1979).[4] The first determination is whether a reasonable expectation of privacy exists. If so, then the court must balance the public records disclosure interest against the privacy interest. Gannett River States Publishing v. Hussey, 557 So.2d 1154, 1158 (La.App. 2d Cir.), writ den. 561 So.2d 103 (La.1990).
The record does not show what account numbers and telephone numbers are in the documents. The City and Frick provided no proof by affidavit or otherwise and did not fully brief that issue on appeal. Under La. R.S. 44:35(B), the custodian who denies a person the right of access has the burden to sustain his action.
This Court has nothing upon which to assess the competing constitutional interests and no basis to overturn the trial court's ruling.

Good Faith
Frick and the City maintain that the mandamus was improperly issued because they responded to the Alliance's requests in good faith. Bad faith is not a requirement to the issuance of a writ of mandamus under either the Public Records Law or the procedural articles on mandamus.
That argument has no merit.

Time and Cost for Copies
The City and Frick assert that they are not required to copy the public records during normal business hours and free of *1136 charge. The trial court held that the Alliance is entitled to reproduction of the records without cost during normal hours.
Under La. R.S. 44:31 a person requesting public records may choose one of four options: inspect the records, copy the records, reproduce the records, or obtain from the custodian a reproduction of the records. The custodian may establish and collect a reasonable fee for making copies of public records. La. R.S. 44:32(C)(1)(a). However, the person requesting copies may choose to make the copies.
The statute is clear and unambiguous in its grant of these alternate rights [provided in § 31], and it also is clear that the choice of which optional right to exercise rests with the one requesting the records and not with the custodian.
Title Research Corp. v. Rausch, 450 So.2d at 937.
The custodian must provide sufficient facility and comfort to allow the public to exercise its rights of access and must not discourage any person. La. R.S. 44:32(A); Title Research Corp. v. Rausch, 450 So.2d at 937. The City and Frick contend that Rausch does not apply because it involved public records of immovables. As we previously stated, the public's right to public records is a fundamental, constitutional right and is not limited to immovables. The Public Records Law is intended to enforce that right "in the most expansive and unrestricted way possible." Id. at 937.
The examination of records must be conducted during regular office hours "unless the custodian shall authorize examination of records in other than regular office ... hours." La. R.S. 44:32(A). The custodian shall segregate the requested record from other records, and if segregating the record is unreasonably burdensome or expensive, the custodian shall so state in writing. La. R.S. 44:33(A).
Elliott v. District Attorney of Baton Rouge, 94-1804 (La.App. 1 Cir. 9/14/95), 664 So.2d 122, 126, writ den. 95-2509 (La.12/15/95), 664 So.2d 440, held that it is implicit in §§ 32(A) and 33(A) that examination of records or a request for production cannot be so burdensome as to interfere with the operation of the custodian's constitutional and legal duties. The City and Frick do not cite and we have not found any authority defining "interference" with the custodian's duties. A 1981 Attorney General's opinion states that the line between inconvenience and interference with office conduct is a question of discretion which must be exercised in good faith by the custodian but that
an order by the custodian requiring after hour examination is subject to strict scrutiny and will be allowed when the request is of such a magnitude that it disrupts normal office procedure to the point where the office ceases to operate....
1980-81 La. Op. Att'y. Gen. 181, No. 81-615 (1981).
Frick's affidavit states that the Alliance previously copied records, that "the only space available in her office for personal reproducing capability does not have a plug for an electrical outlet," and that the Alliance's equipment obstructs access to a copy machine, facsimile machine, and the file room. Correspondence from the Alliance to Frick states that the Alliance's copier is portable and requests "a desk top or, minimally, an extra chair ... to set up the copier."
Although the custodian has discretion, the evidence does not show that the Alliance's request would disrupt normal office procedures. There is no justification to impede the Alliance's constitutional and statutory rights to the records during normal business hours.
The trial court properly ordered the City and Frick to allow the Alliance to make copies during normal business hours.

Conclusions
Mandamus is an alternative remedy under the Public Records Law. The Alliance is not required to establish that Frick and the City would not comply with a declaratory judgment. Whether a public record is exempt from disclosure may be determined in the mandamus proceeding.
The trial court properly ordered the City and Frick to amend their responses when they denied possession. The custodian who *1137 denies possession of public records must provide the information set forth in La. R.S. 44:34.
The record does not establish whose privacy interests are involved or establish that those privacy interests outweigh the Alliance's constitutional right to access public records. There is no basis to hold that the requested information is exempt from the Public Records Law. The work product exemption does not apply to records which are unrelated to the attorney-client relationship or which were not prepared in anticipation of litigation.
The trial court properly ordered the City and Frick to allow the Alliance to copy the documents during normal business hours free of charge. Although the custodian may charge a reasonable fee for copies which the custodian makes, the person requesting the documents may exercise his right in a manner authorized by the Public Records Law and choose to make the copies. The record does not establish that reproduction of documents by the Alliance will disrupt the defendants' normal operating procedures during the work day.
The judgment is affirmed.
AFFIRMED.
NOTES
[1] The Alliance's April 9, 1996 letter requested Frick amend her response to the Alliance's January 29, 1996 records request. The Alliance characterized its request as one for "records ... created by third parties under contract with the City of New Orleans, the subject matter of which relates to the affairs of the City Council Regulatory Office."
[2] The March 27, 1996 request was directed to Councilman Jim Singleton.
[3] La. C.C.P. art. 1424 provides in pertinent part:

The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, ... expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert.
[4] Hatfield v. Bush, 540 So.2d 1178, 1183 (La. App. 1st Cir.1989) noted that La. R.S. 44:11 as amended by Acts 1987, No. 371 appears to partially overrule Webb insofar as § 11 exempts from disclosure certain items in the personnel record of a public employee. That is immaterial to this case.