LOBRANO, J.,
dissents and assigns
reasons.
hi respectfully dissent and would affirm the district court’s judgment dismissing the writ" of mandamus filed by the New Orleans Bulldog Society’s a/k/a New Orleans Bully Rescue (the Bulldog Rescue). Although I agree with the majority’s pronouncement that any law affecting the public’s right to access public records must be interpreted “in the most expansive and unrestricted way possible,” Alliance for Affordable Energy v. Frick, 96-1763, p. 17 (La.App. 4 Cir. 6/28/97), 695 So.2d 1126, 1136,[1]1 find that the Louisiana Society for the Prevention of Cruelty to Animals (LSPCA) is not a proper party to respond to the Bulldog Rescue’s public records request. Although the law is clear that a public body must produce, upon proper request, all . public records that are not considered an invasion of the constitutionally guaranteed right to privacy[2] or that *1004 fall under a specific |2exception, the LSPCA is not a public body, and thus, LSPCA’s CEO, Ana Zorilla, is not the proper custodian of the documents under the Louisiana Public Records Act. See La. R.S. 44:1 et seq.
The term “public body” means “any branch, department, office, agency, board, commission, district, governing authority, political subdivision, or any committee, subcommittee, advisory board, or task force thereof, any other instrumentality of state, parish, or municipal government, including a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function, or an affiliate of a housing authority.” La. R.S. 44:1(A)(1) (emphasis added). A “custodian” under the Louisiana Public Records Act is a “public official or head of any public body having custody or control of a public record, or a representative specifically authorized by him to respond to requests to mspect any such public records.” La. R.S. 44:1(A)(3) (emphasis added). The custodian “shall present any public record to any person of the age of majority who so requests.” La. R.S. 44:32(A). The majority asserts that the LSPCA is a public body and its head, Ana Zorilla, is the custodian of the documents sought by the Bulldog Rescue because the LSPCA is a quasi-public nonprofit corporation that serves as a “municipal instrumentality” to provide animal control services that are otherwise a “city responsibility.” In my opinion, this reasoning runs contrary to La. R.S. 44:1(A)(1).
^Particularly, La. R.S. 44:1(A)(1) requires that for a private nonprofit corporation to be classified as a quasi-public nonprofit corporation subject to the Louisiana Public Records Act, it must be “designated” to perform a governmental or propriety function. While the City of New Orleans could have “designated,”[3] by law,[4] *1005 any entity to perform these functions, the City instead chose to engage in contractual negotiations, and allow LSPCA to voluntarily agree[5] to perform these government functions.
Although the LSPCA is not designated this responsibility by law, but rather voluntarily contracted to do so through a Cooperative Endeavor Agreement (CEA), the majority concludes that LSPCA is subject to public records requests because it is a private entity acting as an instrumentality of a municipality. Instrumentality status is reached, according to the majority, when the private entity is “rendering Lmandated (by the Municipal Code ordinances) municipal services” to the public. In support of this conclusion, the majority points out that the CEA provides LSPCA with financial compensation for their services that amounts to “a substantial sum of money derived from public funds,”[6] and that LSPCA officers wear uniforms which supposedly are “clearly designed to indicate a quasi-official status,” while investigating possible municipal violations.
This logic fails when one considers what municipal cooperative endeavor agreements this overly broad definition could ever exclude. The municipality in question, the City of New Orleans, cannot enter into a cooperative endeavor agreement except to serve a public purpose. City of New Orleans, Home Rule Charter, Art. IX, § 9-314. How “public purposes” differ from “rendering mandated (by the Municipal Code of ordinances) municipal services” is unclear to the point of creating no distinction, especially when one considers the contents of the Municipal Code in question. The majority’s opinion creates a good argument for anyone wishing to obtain the records of any entity that contracts with the City of New Orleans, provided that person can find some *1006 justification for the services provided for in that contract within the. voluminous Municipal Code. ■
State ex rel. Guste v. Nicholls College Foundation supports the proposition that to be “designated” to perform a government function means more than to contract to do it. 564 So.2d 682, 686 (La.1990). In Nicholls, the Louisiana Supreme Court found that “because, of its close relationship with Nicholls State” the Nicholls State Alumni Federation is a quasi-public nonprofit corporation “designated as an entity to perform a government or proprietary function.” Id. As examples of this close relationship resulting in designation, the Nicholls court cited the Federation’s formation to serve a public purpose, residence in a Nicholls State | ^University building, payment of nominal rent for such residence, and use of civilian employees to run its office. Id. Interestingly, the Nic-holls court description of the relationship between the parties is in direct contradiction to this case. The testimony of the CEO of the LSPCA explained the contractual relationship between the LSPCA and the City of New Orleans. When Ms. Zoril-la testified before the district court, she stated that the LSPCA was not formed to serve a public purpose, that only twelve percent of the LSPCA’s budget came from its contract with the City of New Orleans, that the LSPCA provides all services using its own equipment, facilities, and vehicles, and that the LSPCA does not use city employees to run its operation. Given the difference in the relationship , outlined in Nicholls and the relationship between these- parties, the district court did not commit manifest error m determining the LSPCA is not a public body, and thus granting the involuntary dismissal.[7]
Although the majority ultimately found that the LSPCA is a public body, given my opinion that the LSPCA is not a public body, it is important to address one other point raised by the Nicholls case. The Bulldog Rescue argued that the Nicholls court did not require that the records sought be in the possession of a public body, but only that a public body, in the discharge of its duties, had transferred money to the organization. The Nicholls court did say:
If a private corporation accepts public money from a public body in the discharge of the latter’s, constitutional or legal duties, it must disclose records concerning those transactions, including the receipt and expenditure of those funds. If those corporations wish to avoid divulging nonpublic receipts and expenditures, they need only maintain separate and distinct books, accounts and records.
| (Nicholls, 564 So.2d at 689.
Notably, the Nicholls court only required private corporations to disclose records concerning “those transactions” for which public money has been accepted from a public body. Id. Further, the Nic-holls court stated that when the recipient of public funds “has provided goods or services” it is not evident that the funds were accepted “in connection with a constitutional or legally endowed responsibility” that would lead to disclosure requirements. Id. at 688.
*1007 Here, the public body in question, the City of New Orleans, defined via contract exactly what “those transactions” were. Specifically, the LSPCA was required to disclose records concerning:
the monthly number of animals impounded including the description of each animal, date of receipt, date and manner of disposal, treatment received (including spaying and neutering), the name of person redeeming or adopting an animal, fees, charges and proceeds of adoption or redemption; the number of calls received from the public, the number of calls completed, response times, the number of enforcement actions and utilization of shelter capacity.
This does not constitute a limitation on Public Records Act by contract, which is improper, but rather a limitation on what transactions public money can be spent on as per the CEA.
Nowhere in the record does either side allege that these requirements were not met by the LSPCA. The Bulldog Rescue alleges that meeting these requirements is not sufficient and further, that a finding that meeting the CEA requirements is sufficient allows parties to contractually limit their obligations under the Public Records Act. This interpretation is patently false. It simply puts the onus on public bodies that choose to privatize certain government functions through third party contracts to provide the public access to those specific records — which is what was stated in Nicholls, 564 So.2d at 689. The City of New |7Orleans, as custodian, is mandated to provide access to public records,[8] and should have responded to the Bulldog Rescue’s request accordingly.
I respectfully dissent.

. See also Amoco Prod. Co. v. Landry, 426 So.2d 220, 222 (La.App. 4 Cir. 1982), writ denied sub nom. Amoco Prod. Co. v. Landry, 433 So.2d 164 (La.1983).

. Article I, Section 5 of the Louisiana Constitution expressly prohibits unreasonable invasions of privacy. Article I, Section 5 protects documents held by public entities from disclosure under certain circumstances. See Copeland v. Copeland, 2007-0177, p. 9 (La. 10/16/07), 966 So.2d 1040, 1046 (finding that, on balance, a reasonable expectation of privacy could outweigh the disclosure interest in court records). This right is not absolute, but is limited by society’s right to be informed about legitimate subjects of public interest. Angelo Iafrate Const., L.L.C. v. State ex rel. Dep’t of Transp. & Dev., 2003-0892, p. 5 (La. App. 1 Cir. 5/14/04), 879 So.2d 250, 255, writ denied sub nom. Angelo Lafrate Const., L.L.C. v. State ex rel. Dep’t of Transp. & Dev., 2004- *1004 1442 (La.9/24/04), 882 So.2d 1131 (citing Capital City Press v. East Baton Rouge Parish Metro. Council, 96-1979 (La.7/1/97), 696 So.2d 562, 566). “When a request for public records is at issue, the custodian or the individual claiming the privacy right must prove that there is a reasonable expectation of privacy against disclosure of the information to a person entitled to access to the public information. If, and only if, a reasonable expectation of privacy is found, the court must weigh or balance the public records disclosure interest against the privacy interest.” Angelo, 2003-0892 at p. 6, 879 So.2d at 255, (citing Webb v. City of Shreveport, 371 So.2d 316, 319 (La.App. 2 Cir.1979), writ denied, 374 So.2d 657 (La.1979)). See also Local 100, Serv. Employees, Int'l Union v. Smith, 36,454, p. 6 (La.App. 2 Cir. 10/23/02), 830 So.2d 417, 421, writ not considered sub nom. Local 100 v. Smith, 2002-2858 (La.1/31/03), 836 So.2d 75 (acknowledging Webb as superseded by statute, but reaching the conclusion that if a reasonable expectation of privacy is found, the court must balance that privacy interest against the disclosure interest). In this case, the LSPCA argued that even if it were a public body, which it maintains that it is not, it has a privacy interest in the records sought beyond what has been provided to the City per the CEA that Article I, Section 5 would protect. The majority, after declaring the LSPCA a public body, failed to determine if that privacy interest was reasonable and, if so, apply the balancing test. See also Shane v. Par. of Jefferson, 2014-2225 (La.12/8/15), - So.3d -, 2015 WL 8225830 at *12 (finding that when a reasonable privacy interest exists in the records sought, it must be balanced against the disclosure interest of the person seeking the records).

. See City of New Orleans, Code of Ordinances, Art. I, § 18-1, stating, in pertinent part, that agency "means the agency or entity ... designated by the City of New Orleans to maintain an animal control program for the city.” While this portion of the municipal code makes it clear that the City of New Orleans had the authority to designate an entity, the record in this case indicates that the City chose instead to contract out, rather than designate, the provision of animal control services. See infra, n. 5. Further, the City of New Orleans in its municipal code has *1005 created an entity and designated that entity to provide specific governmental services. See, e.g., City of New Orleans, Code of Ordinances, Art. XIII, § 2-1120(10) (designating the office of the inspector general with the authority to audit individuals with contracts with city government). See also La. R.S. 24:513 (wherein quasi-public agencies, for the purposes of the legislative auditor, are defined as organizations "created” by the State of Louisiana or its political subdivisions, organizations that are component units of governmental reporting agencies, or organizations created to serve a public purpose and subject to some specific governmental control, such as the ability to be unilaterally dissolved by a government agency, or having its governing body directly elected by the public).

.See, e.g., Lewis v. Spurney, 456 So.2d 206, 207 (La.App. 4 Cir. 1984), writ denied, 457 So.2d 1183 (La.1984), and writ denied, 458 So.2d 488 (La.1984) (finding that a private corporation, which was created to organize the World’s Fair in New Orleans, had to submit to public records requests when an act was passed designating, public funds to cover any of the corporation's deficits); La. Att’y Gen. Op. No. 05-0254 (finding that a drug court, created by specific statutory authority provided by the State Legislature is a quasi-public corporation). See also La. Att’y Gen. Op. Nos. 93-595, 92-736, 90-271, 84-583, 78-1183, 77-1726, and 75-124 (finding that quasi-public corporations are organized to serve or provide a public service, and primarily funded by public monies).

. See, e.g., Shelter Mut. Ins. Co. v. Rimkus Consulting Grp., Inc. of Louisiana, 2013-1977, p. 17 (La.7/1/14), 148 So.3d 871, 881 (stating “This court has long recognized that freedom to contract is an important public policy” and “ 'Freedom of contract' signifies that parties to an agreement have the right and power to construct their own bargains.”), La. C.C. art. 1906 (stating that contracts are formed by "agreement”), La. C.C. art. 1927 (stating that a contract “is formed by the consent of the parties”), 12 La. Civ. L. Treatise, Tort Law § 18:1 (2d ed.) (using obligations assumed by contract as an example of obligations voluntarily assumed).

. It should be noted that according to the record in this case, only 12% of the LSPCA’s funding is derived from public sources.

. Importantly, the issue when reviewing decisions básed on the manifest error standard is whether the district court's conclusion was a reasonable one, not whether the conclusion was right or wrong in the minds of the re-viéwing-judges. Guste Homes Resident Mgmt. Corp. v. Thomas, 2012-1493, p. 4 (La.App. 4 Cir. 5/29/13), 116 So.3d 987, 989 (citations omitted). Even if the appellate court feels that its evaluation is more reasonable than the district court’s, the decision of the district court should only be reversed if its finding was “clearly wrong.” Id.

. See, e.g., La. R.S. 44:31(A), stating “Providing access to public records is a responsibility and duty .of the appointive or elective office of a custodian and his employees.” See also Frick, 96-1763 at p. 8, 695 So.2d at 1132 (finding that the "rights and duties” of a city agency were established under the Public Records Act, and that the city agency, as custodian of records, would be subject to a writ of mandamus compelling production of records).