982 So.2d 941 (2008)
Norris HENDERSON
v.
Chief Judge BIGELOW in his Personal and Professional Capacity.
No. 2007-CA-1441.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 2008.
*942 Richard C. Teissier, New Orleans, LA, for Plaintiff/Appellee.
Brett J. Prendergast, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge DENNIS R. BAGNERIS SR., Judge MAX N. TOBIAS JR., Judge DAVID S. GORBATY).
MAX N. TOBIAS, JR., Judge.
The defendant, Raymond Bigelow ("Judge Bigelow"), in his personal and professional capacity as Chief Judge of the Criminal District Court for the Parish of Orleans ("CrDC"), appeals the trial court's issuance of a writ of mandamus pursuant to the Public Records Act, La. R.S. 44:1 et seq., compelling the production of records in his possession regarding all payments or disbursements of funds from Section "I" of the CrDC,[1] Judicial Expense Fund of the CrDC ("JEF"), or from any fund administered or controlled by Judge Bigelow or on his behalf. Judge Bigelow contends that the Public Records Act does not apply to the judiciary.[2] After reviewing the record, we affirm the trial court's granting of the writ of mandamus.

BACKGROUND
In April 2007, the plaintiff, Norris Henderson ("Henderson"), co-director of Safe Streets/Strong Communities, pursuant to the authority contained in La. R.S. 44:31 et seq., sent two separate written public records requests directed to Robert Kazik ("Kazik"), Judicial Administrator of the CrDC, and Judge Bigelow, as Chief Judge, seeking to inspect and copy specifically enumerated categories of documents relating to financial records and minutes of en banc meetings held by the judiciary of the Orleans Criminal Court.
By letter dated 13 April 2007, Henderson requested of Judge Bigelow and Kazik:
1. Records of any and all payments made by defendants charged or prosecuted in Section I, to the Judicial Expense Fund or to any fund administered or controlled by Judge Bigelow or on his behalf, between January 1, 2005, and this date.
2. Records of any and all bonds forfeited, along with an accounting of the *943 funds secured through the forfeiture arising out of cases in Section I, Criminal District Court between January 1, 2005 and this date.
3. Record[s] of all payments or disbursements of funds from the Section I, Judicial Expense Fund or from any fund administered or controlled by Judge Bigelow or on his behalf, between January 1, 2005 and this date.
4. Records of any and all notices of conflicts filed by Judge Bigelow in any case in Section I between January 1, 2005 and this date.
5. Records of any and all exchanges of funds, whether for purchase or sale of property (whether personal, tangible, or otherwise), payment for services, donation, gift or salary or otherwise, between Judge Bigelow (in his personal or professional capacity) and any current or former member of the Orleans Indigent Defense Board or his or her law partner or associate or immediate family member thereof, between January 1, 2005 and this date.
By letter dated 24 April 2007 sent to Judge Bigelow and Kazik, Henderson made his second request, re-submitting the first five categories for inspection and copying and adding the following three categories:
6. The notice, agenda and minutes of the en banc meeting held on April 12, 2007, including but not limited to the names of the judges present, any and all votes and/or decisions made at that meeting.
7. Any and all rules adopted or promulgated by the judges of Orleans Parish Criminal District Court concerning the appointment, retention, or oversight of members of the indigent defender board.
8. Any and all rules adopted or promulgated by the judges of Orleans Parish Criminal District Court concerning the management of en banc meetings.
On 4 May 2007, prior to receiving a response to either request, Henderson filed a Petition for Writ of Mandamus[3] seeking access to the requested records, and for an award of attorney's fees, damages, and costs pursuant to La. R.S. 44:35 A.
Subsequent to filing of the petition, Judge Bigelow, through his counsel of record, responded to Henderson's requests. Specifically, Judge Bigelow provided access to records evidencing payments made to the JEF by the criminal defendants charged or prosecuted in Section "I," and any other fund administered or controlled by him or on his behalf. Additionally, he advised that the documents requested for two of the categories (namely, categories two and four) were in the custody and control of the Clerk of CrDC, and that no documents existed for two other categories (categories seven and eight). Judge Bigelow refused to provide access to documents for the remaining three categories (categories three, five, and six) on the basis that these documents did not constitute "public records" subject to disclosure as determined by two opinions of the Louisiana *944 Attorney General opining that the judiciary is exempt from the Public Records Act.[4]
Judge Bigelow argued that La. R.S. 13:1381.4 (which requires the annual audit of the JEF of the CrDC be filed and available for public inspection with the office of the legislative auditor) provides an additional basis for the judiciary's exemption from the Public Records Act. Specifically, Judge Bigelow asserted that if the legislature intended for all judicial expense records to be subject to disclosure under the Public Records Act, it would not have enacted the statute requiring that only the annual audit be available for public inspection.
Henderson's petition was initially heard on 15 May 2007, wherein each side presented oral argument. At that time, Henderson agreed to significantly narrow the scope of the documents sought solely to category three (seeking review of all financial records evidencing payments or disbursements of funds from the Section "I", JEF, or other fund(s) administered or controlled by Judge Bigelow or on his behalf, between 1 January 2005 through the then current date). At the close of the hearing, the trial judge took the matter under advisement and ordered additional briefing by the parties regarding the effect, if any, of La. R.S. 13:1381.4 on the applicability of the Public Records Act to the judiciary.[5] The matter was reset for hearing.
On 23 July 2007, the trial court, in oral reasons for judgment, ruled that based on the fundamental right of the public to have access to public records "guaranteed by both the Louisiana Constitution and the Public Records Law," which "must be construed liberally in favor of free and unrestricted access to the records," the judiciary is subject to the disclosure requirements of the Public Records Act. The trial court specifically recognized the inherent authority of the judicial branch of government to create exceptions to the Public Records Act as done by the Supreme Court in Bester v. Louisiana Supreme Court Committee on Bar Admissions, 00-1360 (La.2/21/01), 779 So.2d 715, but declined to judicially create an exception for the financial records requested by Henderson. Accordingly, Henderson's petition for the writ was granted and the trial court ordered Judge Bigelow to produce the requested financial records in his possession within 15 days of the signing of the judgment. The trial court further ordered Judge Bigelow to pay reasonable attorney's fees to be determined at a later date. The trial court denied Henderson's request for the imposition of a $100.00 per day fine. The instant appeal ensued.

DISCUSSION
Judge Bigelow assigns two errors on appeal: (1) the trial court erred in determining that he had not made available all *945 of the documents requested to Henderson, and (2) the trial court erred in ruling that the Public Records Act applies to the judiciary.[6] Although the two issues are interrelated, we address them separately.

Access to Public Records Provided by Judge Bigelow to Henderson
In his first assignment of error, Judge Bigelow claims the trial court erred in failing to conclude that Henderson was provided access to all of the documents he requested, including "[r]ecords of all payments or disbursements of funds from the Judicial Expense Fund between January 1, 2005 and this date." Judge Bigelow contends the appellate record supports his contention that access to all of the documents requested was granted to Henderson.[7] Further, he avers that because he provided access to all of the requested documents pursuant to the constitutional requirements for disclosure of public records mandated by La. Const. art. XII, § 3 and not pursuant to the Public Records Act, discussed infra, the trial court erred in awarding attorney's fees on the ground that there is no attorney's fee provision contained in La. Const. art. XII, § 3 for nondisclosure.
The record is unclear exactly to which JEF records Judge Bigelow granted Henderson access. Specifically, Judge Bigelow initially responded to Henderson's request advising that he was taking the position that (a) records of all payments or disbursement of funds from the JEF; (b) records of all exchanges of funds between Judge Bigelow and the Orleans Indigent Defense Board, law partners or associates, and/or family members; and (c) minutes of en banc meetings, do not constitute "public records" subject to the disclosure requirements; thus, Judge Bigelow would not be providing access to these three categories of records. When Judge Bigelow allowed Henderson access to inspect an anticipated 10,000 pages of documents, we assume that these 10,000 pages did not, in fact, contain the above-enumerated categories of records. We find no evidence in the record on appeal indicating that Judge Bigelow ever recanted or changed his position that these specific documents were not subject to public inspection.
At the trial court hearing, Henderson agreed to significantly limit the records request solely to those documents evidencing payments or disbursements of funds made from Section "I," the JEF, or any other fund controlled in any way by Judge Bigelow. Despite this narrowing of the request, we find that Judge Bigelow continuously maintained his position at the hearing, in post-hearing memoranda, and on this appeal that the requested financial records of the judiciary are not "public records" subject to disclosure under the Public Records Act. Thus, while the trial record indicates that Judge Bigelow provided Henderson with access to voluminous records, it is unknown whether Judge Bigelow in fact provided access to the specific financial records requested by Henderson. It is the order to disclose these very financial records that formed the basis of the trial court's ruling (i.e., holding that financial records of the judiciary *946 reflecting payments and disbursements are public records subject to disclosure under the Louisiana Constitution and the Public Records Act), from which Judge Bigelow appeals. Based on our review of the record, we cannot say that the trial court manifestly erred or was clearly wrong in determining that Judge Bigelow failed to produce for inspection the requested financial records of the judiciary.
The determination of whether the trial court properly assessed attorney's fees (albeit, the amount to be determined by the trial court at a later date) for the failure to disclose the requested documents turns on the applicability of the Public Records Act to the judiciary at issue. Thus, we address the issue of attorney's fees below.

The Applicability of the Public Records Act to the Judiciary
By his second assignment of error, Judge Bigelow argues that the Public Records Act does not apply to records in the custody of the judiciary and, thus, the judiciary's records  financial or otherwise  are not "public records" subject to disclosure. This issue, which seeks an interpretation and application of La. R.S. 44:1 et seq., to documents in the possession of the judiciary or its representative, is a question of law; thus, we review the matter de novo. See Burnette v. Stalder, 00-2167, p. 5 (La.6/29/01), 789 So.2d 573, 577; Cleco Evangeline, L.L.C. v. Louisiana Tax Com'n, 01-2162, p. 3 (La.4/3/02), 813 So.2d 351, 353.
Judge Bigelow frames the issue before us as "whether the legislature may interfere with the independence of the judiciary by prohibiting the judiciary from making its own determination as to which documents shall be kept confidential." He argues that because the application of the Public Records Act to the judiciary would violate both the separation of powers set forth in our constitution and the inherent authority of the courts, the application is both unnecessary and unwarranted. We disagree.
The Louisiana Public Records Act is codified at La. R.S. 44:1, et seq. The public's right of access to public records also has a constitutional basis, as Article XII, § 3 of the 1974 Louisiana Constitution states that "[n]o person shall be denied the right to observe the deliberations of public bodies and examine public documents except in cases established by law."[8]See Bester v. Louisiana Supreme Court Committee on Bar Admissions, 00-1360, p. 7 (La.2/21/01), 779 So.2d 715, 719. The Supreme Court has recognized that the public's right of access to public records is a "fundamental right" guaranteed by La. Const. art. XII, § 3. Landis v. Moreau, 00-1157, p. 4 (La.2/21/01), 779 So.2d 691, 694. In Title Research Corp. v. Rausch, 450 So.2d 933 (La.1984), the Supreme Court stated:

*947 The legislature, by the public records statutes, sought to guarantee, in the most expansive and unrestricted way possible, the right of the public to inspect and reproduce those records which the laws deem to be public. There was no intent on the part of the legislatures to qualify, in any way, the right of access. [Citations omitted]. As with the constitutional provision, the statute should be construed liberally, and any doubt must be resolved in favor of the right of access.
Id. at 694.
In general, the Public Records Act makes available for inspection and reproduction "any public record" not specifically exempted or excepted from the Act's broad scope. See La. R.S. 44:31 B.[9] The definition section of the Public Records Act does not purport to define the term "public documents" as used in article XII, § 3, but rather defines "public records" in an expansive fashion. Bester, 00-1360 at p. 7, 779 So.2d at 719. Among other things, public records are "records . . . prepared, possessed, or retained for use in the conduct, transaction or performance of any business, transaction, work, duty, or function . . . performed by or under the authority of the constitution or laws of this state . . . or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or laws of this state . . ." See La. R.S. 44:1 A(2)(a). [Emphasis supplied].[10]
One of the purposes of the Public Records Act is to insure that public business is subject to public scrutiny. Times-Picayune Publishing Co. v. Johnson, 94-0790 (La.App. 4 Cir. 10/3/94), 645 So.2d 1174, 1176. The use of public funds collected and deposited into the legislatively created judicial expense funds[11] for the courts of this state concern matters of public business, and concern the receipt or disbursement of monies received or paid under the laws of this state. As such, unless specifically exempted or excepted from the disclosure requirements of the Public Records Act[12] or the Louisiana Constitution, all records relative to the expenditures and disbursements of public monies from the various courts' judicial expense funds fall within the broad definition *948 of public records and are subject to disclosure, which would include the specific financial records sought by Henderson from Judge Bigelow.[13]
Next we turn to the Public Records Act itself to see if the financial records Henderson seeks are specifically exempt from disclosure.
The Public Records Act contains numerous exceptions that serve to protect the confidentiality of a variety of records. Among the exceptions are the following: La. R.S. 44:2 (records involving preliminary legislative investigations); La. R.S. 44:3 (certain records of prosecutive, investigative, and law enforcement agencies, and communications districts); La. R.S. 44:3.1 (certain records pertaining to terrorist-related activities); La. R.S. 44:3.2 (documents regarding proprietary and trade secret information); La. R.S. 44:10 (documents and proceedings of the Louisiana Judiciary Commission); La. R.S. 44:11 (certain personnel records), and La. R.S. 44:13 (certain library registration records). See also Bester, 00-1360 at pp. 7-8, 779 So.2d at 719. Additionally, La. R.S. 44:4 contains 41 additional categories of exemptions from disclosure and addresses the records of a number of different agencies. In La. R.S. 44:4.1 B, the legislature, "recognizing that there exists exceptions, exemptions, and limitations to the laws pertaining to records throughout the revised statutes and codes of this state," provided a list of 35 categories of documents, citing to the specific revised statutes, articles from the codes of civil and criminal procedure, and the children's code, that are exempt from disclosure. See La. R.S. 44:4.1 B(1)-(35).
Our review of each of the categories of documents specifically exempted or otherwise excepted from disclosure reveals that no express exemption for documents of the judiciary. Therefore, in accordance with La. R.S. 44:4.1 A, we look to the Louisiana Constitution to determine if it provides an exception, exemption, and/or limitation pertaining to all records of the judiciary, including the financial records sought in this case. In this regard, Judge Bigelow argues that the Supreme Court's decision in Bester, supra, which addresses the constitutional separation of powers and the inherent authority vested in the courts, supports his argument that all records of the judiciary are confidential and, therefore, should be exempt from disclosure under the Public Records Act and constitution.[14]
In Bester, at issue was whether bar examinations, model answers, grading guidelines, and processes for destroying examination papers of the Committee on Bar Admissions were exempt from disclosure under the Public Records Act and the constitution. In reaffirming its exclusive, plenary, and inherent authority to regulate bar admissions, the Supreme Court held that

*949 . . . the exercise of its inherent authority through the promulgation of bar admissions rules and [its] approval of the procedures used by the Committee on Bar Admissions served to protect the confidentiality of the Committee's grading guidelines [and] model answers, as well as the procedures in place regarding the destruction of bar examinations. Specifically, the exercise of [its] inherent authority in the area of bar admissions [granted to the Supreme Court in the constitution] was found to fall within the "except" clause of Article XII, § 3 of the Constitution.
See Louisiana Supreme Court Committee on Bar Admissions v. Roberts, 00-2517, p. 4 (La.2/21/01), 779 So.2d 726, 728.[15]
In Roberts, decided by the Supreme Court the same day as Bester, the Court noted that, "[w]hile the Public Records Law may be used to guide or aid us in the exercise of our inherent authority, that law may not frustrate and impede [the court's inherent constitutional] authority to regulate in the area of bar admissions." Roberts, 00-2517 at p. 4, 779 So.2d at 728; see also Bester, 00-1360 at p. 5, 779 So.2d at 718. Specifically, in Bester and Roberts, the Supreme Court focused on the plenary power and inherent authority granted to it in the constitution over matters regulating all aspects of the practice of law. The Court determined that the records request issued by Bester to the Committee on Bar Admissions sought documents that were confidential and directly related to the regulation of the practice of law, i.e., how the Committee determined which individuals were qualified to be admitted to the state's bar to practice law.
In Bester, the Court went to great lengths to discuss both the separation of powers into the three branches of government and the inherent authority of the courts over the administration of justice granted to the judicial branch of government in the constitution. Id. at pp. 2-5, 779 So.2d at 717-18. We find that this inherent authority granted to the judiciary must be utilized when the failure to do so would somehow result in a bridging or derivation of the balance of power that exists between the three branches of the government. In Bester, concluding that a failure to exercise its inherent authority over a matter integrally related to the practice of law (records pertaining to bar examinations) could potentially bridge the power of the legislative branch with that of the judicial branch, the Court determined that the records requested by Bester fell within the "except" clause in the constitution and were not subject to a public disclosure. Id. at p. 13, 779 So.2d at 721-22. Specifically, the Court held:
We now hold that an additional, limited exception to public disclosure exists for documents we determine should remain confidential, in situations where we are exercising our inherent authority as the head of a separate and independent branch of state government. In exercising its sovereign rulemaking authority, a state supreme court occupies the same position as that of the state legislature. Thus, when we exercise our inherent rulemaking authority regarding bar admissions, we occupy a position not unlike that of the Legislature, and our decisions concerning the disclosure or non-disclosure of documents within our exclusive purview falls within the "except" *950 provision of Article XII, § 3 of the Constitution. (Citations omitted) [Emphasis supplied.]
Id. Significantly, nowhere in Bester does the Supreme Court declare that the Public Records Act does not apply to the judiciary. The Court could have made this ruling, but did not. To the contrary, in reaching its determination, the Court specifically stated that it was creating "an additional, limited exception to public disclosure" of judicial documents it determines "should remain confidential." Id. at p. 13, 779 So.2d at 721.
Applying these precepts to the case at bar, we must now determine if the financial documents Henderson seeks from Judge Bigelow and the JEF are documents over which the court, in the exercise of its inherent authority, should keep confidential and protect from disclosure. We hold that they are not. In reaching this conclusion, we note that the Public Records Act, which provides for public examination of court records, reflects a basic tenet of the democratic system that people have a right to know about the operations of their government, including the judicial branch.[16]
While we recognize that matters regulating all aspects of the practice of law are reserved solely for the Supreme Court, we find that the same cannot be said for the expenditures and disbursements of public funds by the judiciary.[17] The constitution vests in the legislature  not the judiciary  the discretionary function of appropriating public funds. See La. Const. art. III, § 16; La. Const. art. VII, § 10(A); Hoag v. State, 04-0857 (La.12/1/04), 889 So.2d 1019. The legislature decides how the branches and departments of government shall be funded from the public fisc. Segura v. Louisiana Architects Selection Bd., 353 So.2d 330 (La.App. 1 Cir.1977). The various courts' judicial expense funds, including the JEF at issue herein, are legislatively created and their funding is determined by the legislature. See La. R.S. 13:991-996, La. R.S. 13:999, La. R.S. 13:1312, and La. R.S. 13:1381.4.[18] Put simply, the legislature appropriates public monies to the judiciary, regulates the fees and costs collected and deposited into the judicial expense funds, and the judiciary then spends that public money in the operation of its court(s). While the legislature delegates the control of the public funds to the judicial administrator for the various courts of this state, the legislature specifically limits the use of the public funds to the proper administration and/or function of the court or the office of the judges.
*951 It is axiomatic that the public has a right to know how and when public money is spent unless there is some privacy or confidentiality right that needs to be balanced. Therefore, we consider whether the legitimate public interest in allowing taxpayers to be informed as to how their tax money is being spent is outweighed by a compelling privacy interest of the judiciary requiring that their financial records reflecting expenditures and disbursements be kept confidential. Unlike the confidentiality interests at stake in Bester, we find that no compelling privacy interest or confidentiality reason exists to preclude public access to the financial records of the judiciary, nor has Judge Bigelow asserted such a privacy right herein. Further, we find holding that the financial records of the judiciary are public records subject to the Public Records Act and such does not impinge upon the plenary power or inherent authority conferred upon the judiciary by the constitution or in any way frustrates the separation of powers between the three branches of government.
This conclusion is buttressed by the reality that providing public access to the judiciary's financial records reflecting the use of public funds serves to promote trustworthiness of the judicial process, and provides the public with a better understanding of the judicial system, including a better perception of its fairness. Public access to judicial records further serves to curb judicial abuse. Accordingly, we affirm the trial court's issuance of a writ of mandamus ordering Judge Bigelow to produce for inspection the financial documents requested by Henderson.

Attorney's Fees
La. R.S. 44:35 D provides that "[i]f a person seeking the right to inspect or to receive a copy of a public record prevails in such suit, he shall be awarded reasonable attorney's fees and other costs of litigation." The trial court judgment awarded Henderson attorney's fees pursuant to La. R.S. 44:35 "in an amount to be determined at a later date." Judge Bigelow avers that because the Public Records Act does not apply to the judiciary, any award of attorney's fees under the Act was error. Having determined that financial records of the judiciary fall within the ambit of the Act's definition of "public records" and, as such, are the proper subject of a public records request, we find the trial court did not abuse its discretion in providing for attorney's fees in this case. Because the judgment is silent as to a set amount of attorney's fees awarded, we pretermit any further discussion of this issue.

CONCLUSION
This court has repeatedly acknowledged the strong public policy in this state that allows members of the public to have access to public records. Indeed, the Louisiana Constitution demands no less. Accordingly, we hold the public is entitled to inspect the records of the judiciary through a records request made in accordance with the Public Records Act, La. R.S. 44:1 et seq., with the exception of documents that a court, in the exercise of the inherent authority and plenary power vested in the judiciary by the Louisiana Constitution, determines should remain confidential.
AFFIRMED.
NOTES
[1] Section "I" is the section of CrDC that Judge Bigelow occupies.
[2] The trial court further ordered that Robert Kazik, in his capacity as Judicial Administrator of the CrDC, to whom the public records request was also made, produce public records in his possession responsive to the specific public records request.
[3] Mandamus is a writ directing a public officer to perform a ministerial duty required by law. La. C.C.P. arts. 3861 and 3863. A writ of mandamus is an extraordinary remedy and may be issued in cases where the law provides no relief by ordinary means or where delay in obtaining ordinary relief may cause an injustice. La. C.C.P. art. 3862. See also Vogt v. Board of Com'rs of Orleans Levee District, 01-0089, p. 7 (La.App. 4 Cir. 3/27/02), 814 So.2d 648, 653.
[4] Opinion No. 96-229, issued 17 July 1996 (opining that the opening meeting laws do not apply to judges of the Ninth Judicial District Court, and thus, the minutes and/or notes from those meetings are not subject to inspection pursuant to La. R.S. 42:7.1), and Opinion 00-112, issued 8 November 2000 (opining that the personnel telephone list, positions held, and salaries of each employee of all sections of the CrDC and of the Judicial Administrator's Office, as well as a copy of each section of court's annual budget, were not subject to disclosure under the Public Records Act).
[5] In his supplemental memorandum to the court, Judge Bigelow clarified that he was not contending that La. R.S. 13:1381.1 created an exception to the Public Records Act for the judiciary, but rather, that application of the Act to the judiciary would impede the inherent authority of the judiciary as recognized in Bester v. Louisiana Supreme Court Committee on Bar Admissions, 00-1360 (La.2/21/01), 779 So.2d 715.
[6] Although Henderson addresses the trial court's refusal to impose a $100.00 per day fine against Judge Bigelow for refusing to produce the requested records as provided for in La. R.S. 44:35 E(1), the issue was not properly raised on appeal in accordance with La. C.C.P. art. 2133 A. Thus, we are precluded from considering whether the denial of the fine was improper for lack of jurisdiction over the issue.
[7] Specifically, Judge Bigelow relies on the affidavit of Kazik, which attests that "at Judge Bigelow's direction, [Kazik] advised [Safe Streets/Strong Communities] that the requested records were available for inspection."
[8] The avowed purpose of La. Const. art. XII, § 3 was to establish a general constitutional right of public access to deliberations of public bodies and to examine public records. This general right was expressly qualified, however, by the exclusionary provision authorizing exceptions "in cases established by law." The records of the Constitutional Convention demonstrate that it was not the intent of the drafters to change existing law, and that the language chosen was intended to establish a presumption in favor of openness, except where a specific statutory limitation was created. See IX Records of the Louisiana Constitutional Convention of 1973; Convention Transcripts, 3 Jan. 1974, at p. 3073. See generally, Bruce V. Schewe, Comment, Entering the Door Opened: An Evolution of Rights of Public Access to Governmental Deliberations in Louisiana and a Plea for Realistic Remedies, 41 La. L.Rev. 192 (1984). See also St. Mary Anesthesia Associates, Inc. v. Hospital Services Dist. No. 2 of the Parish of St. Mary, 01-2852, p. 4 (La.App. 2 Cir. 12/20/02), 836 So.2d 379, 383.
[9] La. R.S. 44:31 B provides, in pertinent part:

(1) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person of the age of majority may inspect, copy, or reproduce any public record.
(2) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person may obtain a copy or reproduction of any public record.
[10] Any person of the age of majority may inspect, copy, or reproduce or obtain a reproduction of any public record. La. R.S. 44:31 B. The custodian shall present any public record to any person of the age of majority who so requests, and may establish and collect reasonable fees for the reproduction of the records. La. R.S. 44:32 A, C(1)(a).
[11] See La. R.S. 13:991 through 13:996, La. R.S. 13:1312, and La. R.S. 13:1381.4.
[12] See La. R.S. 44:4.1 A, which provides:

The legislature recognizes that it is essential to the operation of a democratic government that the people be made aware of all exceptions, exemptions, and limitations to the laws pertaining to public records. In order to foster people's awareness, the legislature declares that all exceptions, exemptions, and limitations to the laws pertaining to public records shall be provided for in this Chapter or the Constitution of Louisiana. Any exception, exemption, and limitation to the laws pertaining to public records not provided for in this Chapter or in the Constitution of Louisiana shall have no effect. [Emphasis supplied.]
[13] While we recognize that the legislature specifically designated control over the courts' judicial expense funds and all disbursements made therefrom to the various individual courts, this allocation of control, however, does not change the nature or character of the funds therein deposited or dispersed and/or expended; that is, the funds remain public funds. See La. R.S. 13:991 through 13:996, La. R.S.13:1312, and La. R.S. 13:1381.4. Moreover, pursuant to La. R.S. 44:35, the burden is on Judge Bigelow to establish that the documents Henderson seeks are exempt from disclosure.
[14] Judge Bigelow concedes in his brief that the Supreme Court in Bester did not "explicitly hold" that there was a "complete exemption" for the judiciary from the Public Records Act, but submits that this is only because the issue was not presented that broadly to the Court.
[15] In Roberts, the Committee on Bar Admissions sought a declaratory judgment regarding issues surrounding its responses to a number of public records requests seeking the Committee's "grading guidelines." The Supreme Court determined that based on its prior resolution in Bester, which appeared to resolve most of the issues presented, it would be inappropriate to grant declaratory relief.
[16] We note that the financial records in the custody of the Governor, the executive branch, are subject to disclosure under the Public Records Act, La. R.S. 44:5. Additionally, in Times-Picayune Publishing Co. v. Johnson, 94-0790 (La.App. 4 Cir. 10/3/94), 645 So.2d 1174, we recognized that the legislature is likewise subject to the Public Records Act when we held that the legislators were required to disclose public records reflecting nominations for legislative scholarships.
[17] See La. Const. art. VII, § 9; La. R.S. 49:308.
[18] La. R.S. 13:1381.4 B and C provide, in pertinent part: "The judicial administrator of the Criminal District Court for Orleans Parish shall place all sums collected or received . . . in a separate account to be designated as the judicial expense fund for the Criminal District Court for Orleans Parish . . . The judicial expense fund is established and may be used for any purpose connected with, incidental to, or related to the proper administration or function of the court or the office of the judges thereof and is in addition to any and all other funds, salaries, expenses, or other monies that are provided, authorized, or established by law." Annual audits of JEF records are conducted and made public as mandated by statute.