GUIDRY, J.
IgA justice of the peace brings this appeal asserting that the actions of the legislative auditor in investigating and reporting on his office were done in violation of his constitutional rights.
FACTS AND PROCEDURAL HISTORY
In December 2013, Patrick H. DeJean, the Justice of the Peace of the Second Justice Court for the Parish of Jefferson, filed a complaint with the Office of the Legislative Auditor regarding the constable of the Second Justice Court. Over the course of the next year,. the legislative auditor’s office audited the records of the Second Justice Court, including those of DeJean’s office as the Justice of .the Peace.[1] In January 2015, following the completion of the audit, the legislative auditor’s office attempted to schedule an exit interview with DeJean regarding the findings made in the report. DeJean, however, was unable to make arrangements to participate in an exit interview, so on February 2, 2015, a draft of the report was provided to DeJean. On March 9, 2015, DeJean requested that the legislative auditor, Daryl G. Purpera, allow him thirty days to prepare a response to the draft audit report. On March 10, 2015, the legislative auditor refused DeJean’s request.
*14 On March 11, 2015, DeJean, in his capacity as justice of the peace, filed a petition for the issuance of a temporary restraining order, and thereafter,, for issuance of preliminary and permanent injunctions and a declaratory judgment against Purpera, in his official capacity as legislative auditor. Pursuant to De-Jean’s petition, an order was signed by the trial court that “restrained, enjoined, and prohibited” Purpera and his agents, employees, representatives, assigns and “any and all persons, firms or corporations acting or claiming to act” on his behalf from | ¿‘distributing or releasing any reports pertaining to” DeJean and the Second Justice Court. Also in that order, the trial court issued a rule ordering Purpera to show cause on April 2, 2015, why preliminary and permanent injunctions should not be granted.
Prior to the date scheduled for the hearing on the rule to show cause, the trial court held a conference with counsél for the parties. As a result of that conference, the trial court signed an order on March 18, 2015, to dissolve the temporary restraining order and to cancel the rule to show cause hearing scheduled for April 2, 2015, stating “the issue is now moot pursuant to the conference held with the attorneys of record on March 17, 2015.” The following day, the office of the Louisiana Legislative Auditor filed dilatory and peremptory exceptions raising the objections of improper cumulation of actions and no cause of action.
On March 26, 2015, DeJean filed a supplemental and amending petition, asserting that the petition was being filed by him in his individual and official capacities. In the amended petition, he alleged that filing fees collected by his court are not public funds subject to audit and that pursuant to the state constitution, the legislative auditor only had authority to audit the state, its agencies, and political subdivisions. Also, to the extent that his reputation would be defamed by the release of the report, DeJean claimed a violation of his right to procedural due process, and further claimed that the filing of the report with the local clerk of the district court, except in the parishes of East. Baton Rouge and Orleans, is a violation of equal protection.[2] Thus, based on the expounded and renewed allegations of irreparable harm and violation of his constitutional rights, DeJean reurged his request for injunctive relief.
| ¿The trial court denied DeJean’s request for another temporary restraining order and set DeJean’s request for a preliminary injunction for a hearing on March 31, 2015. Following that hearing, the trial court denied DeJean’s request for the issuance of a preliminary injunction in a judgment signed April 10, 2015, but granted him a suspensive appeal of that judgment pursuant to La. C.C.P. art. 3612(B).
DISCUSSION
In his first two assignments of error, DeJean argues that he is entitled to a preliminary injunction against the legislative auditor’s release of the audit report as a matter of law because the release of the auditor’s report would violate his constitutional rights. Generally, a party seeking the issuance of a preliminary injunction bears the burden of establishing by a preponderance of the evidence a prima facie showing that he will prevail on the merits and that irreparable injury or loss will result without the preliminary injunction. La. C.C.P. art. 3601; Tobin v. Jindal, 11-0838, p. 4 (La.App. 1st Cir.2/10/12), 91 So.3d 317, 320. However, a threat of irreparable injury need not be shown when *15 the deprivation of a constitutional right is at issue or when the act sought to be enjoined is unlawful. See Piazza’s Seafood World, LLC v. Odom, 07-2191, p. 10 (La.App. 1st Cir.12/23/08), 6 So.3d 820, 826; Acadian Ambulance Service, Inc. v. Parish of East Baton Rouge, 97-2119, p. 8 (La.App. 1st Cir.11/6/98), 722 So.2d 317, 322, writ denied, 98-2995 (La.12/9/98), 729 So.2d 583.
In this case, DeJean claims the issuance of the auditor’s report would violate his right to due process.[3] DeJean argues that the auditor’s report contains false findings of improper transactions involving the Second Justice Court that would defame him in the eyes of the public, and as such, due process requires that he behgiven a meaningful opportunity to review the evidence upon which the report was based and to refute the contents of the .report before a neutral and independent adjudicator. In support of his claim that the due process protections of the United States Constitution are invoked by the potential defamatory nature of the auditor’s report, DeJean relies on Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971), wherein the U.S. Supreme Court held “[wjhere a person’s good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.”
In Paul v. Davis, 424 U.S. 693, 708, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976), the U.S. Supreme Court recognized that the foregoing quoted text from the Con-stantineau opinion “could be taken to mean that if a government official defames a person, without more, the procedural requirements of the Due Process Clause of the Fourteenth Amendment are brought into play.” However, the Court went on to explain:
We think that the ... language in the last sentence quoted, “because of what the government is doing to him,” referred to the fact that the governmental action taken in that case deprived the individual of a right previously held under state law — the right to purchase or obtain liquor in common with the rest of the citizenry. “Posting,” therefore, significantly altered her status as a matter of state law, and it was that alteration of legal status which, combined with the injury resulting from the defamation, justified the invocation of procedural safeguards. The “stigma” resulting from the defamatory character of the posting was doubtless an important factor in evaluating the extent of harm worked by that act, but we do not think that such defamation, standing alone, deprived Constantineau of any “liberty” protected by the procedural guarantees of the Fourteenth Amendment.
Paul, 424 U.S. at 708-09, 96 S.Ct. at 1164.
In noting this distinction in the Constantineau case, and after reviewing a line of other cases bearing on the relationship between governmental defamation and the guarantees of the Constitution, the Court concluded that when a right or status previously recognized by state law is distinctly altered or extinguished, it is that alteration or official removal of the interest from the recognition and | (¡protection previously afforded by the State that triggers the procedural guarantees of the Due Process Clause of the Fourteenth Amendment, not simply an interest in reputation alone.[4] *16 And as an interest in reputation alone is adequately protected by state tort law and vindication of those interests by an action for damages, the Court concluded procedural due process is not required for a claim based merely on defamation by a governmental agency. See Paul, 424 U.S. at 711-12, 96 S.Ct. at 1165-66.
In the instant matter, DeJean stresses how the publication of the legislative auditor’s report, if the contents of which are proven to be false, would establish the requisites of a claim for defamation. And although DeJean further claims that the report could subject him to removal from office by the Louisiana Supreme Court, he does not allege, nor is it true, that the issuance of the report will “result” in his being removed from office. While the report could lead to an investigation by the Louisiana Judiciary Commission, and subsequent disciplinary action by the Louisiana Supreme Court, see La. Const, art. 5, § 25, which could include his removal from' office,' these possibilities by no means establishes that the release of the auditor’s report will “result” in his removal from office, such that DeJean can claim due process protections against the release of the report. As recognized by the United States Supreme Court, the protections of due process do not apply to the indirect, adverse effects of governmental action. See Town of Castle Rock, Colorado v. Gonzales, 545 U.S. 748, 767, 125 S.Ct. 2796, 2810, 162 L.Ed.2d 658 (2005); O’Bannon v. Town Court Nursing Center, 447 U.S. 773, 789, 100 S.Ct. 2467, 2477, 65 L.Ed.2d 506 (1980); Tharling v. City of Port Lavaca, 329 F.3d 422, 427-28 (5th Cir.2003). Further, even if DeJean is able to prove that the auditor’s report is defamatory, that, is that it contains false allegations against 17PeJean, he has an adequate remedy in tort law, and thus injunctive relief is not mandated.
Additionally, we find no merit in DeJean’s assertion that the legislative auditor’s report violates the constitutional principle of separation of. powers. Article 2, § 2 of the Louisiana Constitution provides’ that “[ejxcept as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.” This section stands for the proposition that “the Constitution is violated only if one branch of government or its members exercises power belonging to either of the others.” State in Interest of A.C., 93-1125, pp. 17-18 (La.1/27/94), 643 So.2d 719, 731, on reh’g, 93-1125 (La.10/17/94), 643 So.2d 743, cert. denied sub nom. A. St. P.C. v. B. C., 515 U.S. 1128, 115 S.Ct. 2291, 132 L.Ed.2d 292 (1995) (quoting State ex rel. Guste v. Legislative Budget Committee, 347 So.2d 160, 165 (La.1977)).
The Louisiana Supreme Court has general supervisory jurisdiction over all other state courts in the state. La. Const, art. 5, § 5. This inherent judicial power may be aided by the legislative and executive branches, but .their acts or failure to act cannot destroy, frustrate, or impede the court’s inherent constitutional authority. State in Interest of Johnson, 475 So.2d 340, 342 (La.1985). A legislative act will only be deemed unconstitutional if the legislative act impedes or frustrates the authority of the Louisiana Supreme Court. But legislative acts passed in aid of the Louisiana Supreme Court’s inherent power will be approved. See Louisiana State Bar Association v. Connolly, 201 La. 342, 355, 9 So.2d 582, 586 (1942).
The Louisiana Supreme Court retains full discretion to render any decree it *17 deems proper in determining whether Dé-Jean is guilty of conduct warranting imposition of discipline and in determining what discipline to impose. The legislative auditor’s report, at most, would simply be evidence affecting the burden 18of proof. See Connolly, 201 La. at 378, 9 So.2d at 593. The legislative auditor is mandated under La. Const, art. 3, § 11 to “perform the duties and functions provided by law related to auditing fiscal records of the state, its agencies, and political subdivisions.” (Emphasis added.) The judicial branch is a part of “the state.” See La. Const, art. 2, § 1. Moreover, the auditor’s report at issue stems directly from the legislative auditor’s exercise of his duties as provided by law, and more specifically, La. R.S. 24:513(A), which statute provides, in pertinent part:
(3) The financial statements of the offices of the independently elected public local officials, including judges, sheriffs, clerks of court, assessors, and district attorneys, all parish' governing authorities, all political subdivisions created by parish governing authorities or by law, and all districts, boards, and commissions created by parish governing authorities either independently or in conjunction with other units of government, school boards, district public defender offices, municipalities, all political subdivisions created by municipal governing authorities, and all boards and commissions created by municipalities, ■ either independently or in conjunction with other units of government, city courts, quasi-public agencies, housing authorities, mortgage authorities, or other political subdivisions of the state not included within the state’s Comprehensive Annual Financial Reports, hereinafter collectively referred to as “local auditee”, shall be audited or reviewed by licensed certified public accountants subject to Paragraphs (5) and (6) of this Subsection, but may be audited by the legislative auditor pursuant to Paragraph (4) of this Subsection. The total compensation, reimbursements, and benefits of an agency head or political subdivision head or chief executive officer related to the position, including but not limited to travel, housing, unvouchered expenses, per diem, and registration fees shall be reported as a supplemental report within the financial statement of the local auditee; however, nongovernmental entities or not-for-profit entities that receive public funds shall report only the use of public funds for the expenditures itemized in the supplemental report. Any person authorized to conduct an audit of a governmental entity pursuant to R.S. 37:77, shall be permitted to continue auditing that governmental entity subject to the approval of the legislative auditor provided for in Paragraphs (5) and (6) of this Subsection.
(4)(a)- Notwithstanding Paragraph (3) of this Subsection and Subsection B of this Section, the legislative auditor may audit or investigate a local auditee only in those instances when:
[[Image here]]
(vi) In the opinion of the legislative auditor and the Legislative Audit Advisory Council the best interest of the state of Louisiana would be served by his audit of the local auditee. [Emphasis added.]
| c,See also La. R.S. 24:513(J)(l)(e)(i)(aa) and (cc)(providing that the legislative auditor may, at his discretion, require a local audi-tee, a justice of the peace, or constable to have an audit of his books).
DeJean has not asserted nor has there been any showing that the legislative auditor’s office committed any acts outside the constitutionally and statutorily authorized duty to audit fiscal records. Moreover, as *18 a branch of “the state,” the Louisiana Constitution expressly authorizes the legislative auditor to audit the fiscal records of the judiciary. See La. Const, art. 3, § 11. Further, while the release of the auditor’s report could form a basis for the Louisiana Supreme Court’s exercise of its supervisory authority over DeJean, based on the record before us, we do not find that DeJe-an has shown that the audit exceeds the scope of the constitutional and statutory authority granted to the legislative auditor or how such a report will impede or interr fere, as opposed to assist, the Louisiana Supreme Court in regulating DeJean’s conduct as a justice of the peace. Hence, we find no merit in DeJean’s assertion that the legislative auditor’s fulfillment • of his constitutional and statutory duties is a violation of the separation of powers provision of the Louisiana Constitution.
Finally, we find no merit in DeJe-an’s assertion that issuance of the audit report would violate his right to privacy. DeJean’s claim of a breach of his right to privacy is premised on his assertion that the funds at issue in the audit are his “personal” funds. He cites La.- R.S. 13:2590 as authority for claiming that the amounts collected by him as justice of the peace for filings and services in civil matters belong to him personally and are not public funds. We do not agree.
Louisiana Revised Statutes 13:2590(B) provides that “[f]ifty percent of each fee and deposit shall be retained by the justice of the peacé for fees and operational expenses of the office and court.” (Emphasis added.) There is no provision in La. R.S. 13:2590 that authorizes a justice of the peace to retain funds | incollected from filings and other services as his- own personal funds. Justices of the peace are generally paid salaries by the-local governing authority and the state as provided by La. R.S. 13:2589, 13:2591, and 13:5802. And while DeJean is correct that the fees collected do not constitute “state funds,” as those fees are not deposited, on receipt, into the state treasury, see La. R.S. 49:308 and Dejoie v. Medley, 08-2223, pp. 8-9 (La.5/5/09), 9 So.3d 826, 831, such a finding does not mean that such funds are thereby deemed to- be the personal funds of the justice of the peace. As plainly provided in La. R.S. 13:2590(B), the self-generated funds collected by the justice of the peace are not his personal funds to use as he pleases.
Instead, by law, those funds collected by the second justice court for filings and services are expressly designated for the operational expenses of the ward constable’s office, the office of the justice of the peace, and the justice court. See La. R.S. 13:2590(B). As explained by our colleagues in the Fourth Circuit:
While we recognize that matters regulating all aspects of the practice of law are reserved solely for the Supreme Court, we find that the same cannot be said for the expenditures and disbursements of public funds by the judiciary. The constitution vests in the legislature not the judiciary-the discretionary function of appropriating public funds. See La. Const. art. [3], § 16; La. Const, art. [7], § 10(A); Hoag v. State, 04-0857 (La.12/1/04), 889 So.2d 1019. The legislature decides how the branches and departments of government shall be funded from the public fisc. Segura v. Louisiana Architects Selection Bd., 353 So.2d 330 (La.App. 1 Cir.1977). The various courts’ judicial expense funds, including the [judicial expense fund] at issue herein, are legislatively created and their funding is determined by the legislature. See La. R.S. 13:991-996, La. R.S. 13:999, La. R.S. 13:1312, and La. R.S. 13:1381.4. Put simply, the legislature appropriates public monies to thé *19 judiciary, regulates the fees and costs collected and deposited into the judicial expense funds, and the judiciary then spends that public money in the operation of its court(s). While the legislature delegates the control of the public funds to the judicial administrator for the various courts of this state, the legislature specifically limits the use of the public funds to the proper administration and/or function of the court or the office of the judges.
Henderson v. Bigelow, 07-1441, p. 16 (La.App. 4 Cir. 4/9/08), 982 So.2d 941, 950, writ denied, 08-1025 (La.6/27/08), 983 So.2d 1292 (footnotes omitted). The Henderson court further recognized that there is no compelling privacy interest or | ^confidentiality reason to preclude public access to the financial records of the judiciary, including justices of the peace, “and such does not impinge upon the plenary power or inherent authority conferred upon the judiciary by the constitution or in any way frustrates the separation of powers between the three branches of government.” Henderson, 07-1441 at p. 17, 982 So.2d at 951.
Thus, contrary to DeJean’s assertion, while the funds at issue in the auditor’s report may not be “state” funds, they are nevertheless “public” funds and are not “personal” funds to which a privacy interest may attach. See La. R.S. 44:l(A)(2)(a) (“the receipt or payment of any money received or paid by or under the authority of constitution or the laws of this state, are ‘public records[,]’” except as otherwise provided by the Public Records Law or the Louisiana Constitution). Accordingly, we reject DeJean’s assertion that the legislative auditor’s report was compiled in violation of his privacy rights such that issuance of the audit report should be enjoined on this basis.
As for DeJean’s remaining assignment of error, we find no merit in DeJean’s contention that pending the trial court’s resolution of his remaining requests for a permanent injunction and declaratory relief,[5] a preliminary injunction is warranted based on the. same claim of “irreparable harm,” as we fully rejected DeJean’s assertions of irreparable harm and violation of his constitutional rights in the foregoing discussion. Further, while DeJean also points out in this assignment of error that the state attorney general failed to participate in the hearing, for a preliminary injunction, he does acknowledge that the attorney general was served with a copy of all pleadings, and we observe that the attorney general was also served all orders setting the matter for hearings as well. While La. R.S. 13:4448 mandates that the attorney general be notified of any proceeding adjudicating the | ^constitutionality of a statute and be afforded an opportunity to be heard, the statute does not mandate the attorney general’s participation.[6] Rather, the statute simply mandates that the attorney general be granted an opportunity to choose whether to exercise his statutory right to represent the state’s interest in the proceeding. See Huber v. Midkiff, 02-0664, p. 9 (La.2/7/03), 838 So.2d 771, 777. The election of the attorney general not to exercise his discretion in the instant mat *20 ter cannot serve as grounds for otherwise granting the preliminary injunction requested.
CONCLUSION
For the foregoing reasons, we find that the appellant failed to meet his burden of establishing by a preponderance of the evidence a prima facie showing that he will prevail on the merits and that irreparable injury or violation of his constitutional rights will result without the preliminary injunction. Accordingly, we find that the trial court did not err in denying the request for a preliminary injunction and hereby affirm its judgment. All costs of this appeal are assessed against Patrick H. DeJean, in his individual capacity.
AFFIRMED.
HOLDRIDGE J., concurs in the result.

. As the records of the constable and the justice of the peace are interrelated, the legislative auditor asserts that DeJean’s request that his office investigate the constable of the Second Justice Court necessarily resulted in an investigation of the records of the justice of the peace office, as both of those offices comprise the Second Justice Court. See La. R.S. 13:2590(B) and La. R.S. 24:513(A)(4)(a)(vi).

. See La. R.S. 24:516.

. The right to due process is guaranteed under both the U.S. Constitution and the Louisiana Constitution. See U.S. Const. Amend. XIV; La. Const, art. 1, § 2.

. The United States Fifth -Circuit Court of Appeals labeled this holding from Paul as the "stigma-plus-infringement test.” See Black *16 burn v. City of Marshall, 42 F.3d 925, 935-36 (5th Cir,1995).

. In its judgment, the trial court ruled solely on the request for a preliminary injunction and not the other relief requested by DeJean in his original and supplemental and amending petitions.

. Moreover, the constitutionality of a statute, absent agreement of the parties, cannot be determined or ruled upon at a preliminaiy injunction hearing. See Farmer’s Seafood Company, Inc. v. State ex rel. Department of Public Safety, 10-1534, pp. 2-3 (La.9/3/10), 44 So.3d 676, 678.