STEPHEN J. WINDHORST, Judge.
laThe parties appeal the district court’s judgment, granting a preliminary injunction for thirty days for Jefferson Parish to comply with the production and redaction of e-mails pursuant to a public records request. For the reasons that follow, we reverse the judgment of the district court and grant Shane’s petition for a preliminary injunction.
FACTS & PROCEDURAL HISTORY

The Parties

William Henry Shane (“Shane”) is a Jefferson Parish businessman and community activist. Shane is a member of the Jefferson Business Council (“JBC”) and the Committee for a Better Jefferson (“CBJ”). The JBC and CBJ are invitation only, private, non-profit organizations made up of business owners and executives committed to improving the economic well-being and quality of life in Jefferson Parish. Shane is a private citizen who participated in the exchange of e-mails concerning political activity.
The Jefferson Parish Economic Development Commission (“JEDCO”) is an independent, political subdivision of the State of Louisiana. Therefore, JEDCO’s ^authority is derived from state law. La. R.S. 34:2021.[1] JEDCO’s stated mission is *409 to attract, grow, and create new business opportunities in Jefferson Parish. JED-CO’s deputy director and custodian of records is Dottie Stephenson.[2]
The former Executive Director of JED-CO is Lucien Gunter (“Gunter”). Gunter is a member of JBC and CBJ. It is undisputed by the parties that Gunter sent and received e-mails concerning political activity (ie., the Jefferson Parish School Board elections in 2010) on his JEDCO e-mail account that are the subject of the public records request in this litigation.
The Times-Picayune and its reporter, Drew Broach, (collectively “Times-Picayune ”) issued several public records requests to JEDCO seeking Gunter’s e-mails as described in the Postlethwaite & Net-terville (“Postlethwaite”) audit report. JEDCO declined to produce the e-mails. The Times-Picayune then issued a public records request to Jefferson Parish (“the Parish”) seeking production of the e-mails based on its understanding that the Parish had possession of copies of the e-mails pursuant to an internal audit of JEDCO performed by Jefferson Parish Internal Auditor, Thomas Fikes (“Fikes”).

Legislative audit of JEDCO

On June 6, 2012, Postlethwaite issued a financial audit report of JEDCO for the year ending December 31, 2011. In the report, Postlethwaite noted that it had been made aware of “de minimus use of JEDCO’s e-mail system” by “certain JED-CO employees” engaging in political activities during the year ending December 81, 2010. Postlethwaite noted that “the de minimus use of e-mails may | snot comply with La. R.S. 18:1465,” which provides that public funds shall not be used to urge any elector to vote for or against any candidate.[3]

The Parish’s internal audit of JEDCO

Subsequent to the Postlethwaite audit and at the request of the Jefferson Parish Council, Fikes conducted an audit of JED-CO.[4] JEDCO provided a copy of the emails to Fikes for his investigation. Fikes did not suggest that any public funds were used by Gunter in generating or receiving the e-mails, but questioned whether Gun-ter violated ethical rules. Fikes recommended that JEDCO conduct an investigation concerning the e-mails to determine if the matter should be referred to the Louisiana Board of Ethics. In response, JED-CO stated that it did not take a position in any political race and believed that Gunter had' sent and received the e-mails as a “private citizen” and not as a “public servant.”

Public records request to JEDCO

On October 26, 2012, the Times-Picayune made a public records request to JEDCO seeking all “political e-mails.” A revised request was sent to JEDCO seeking “all e-mails that were referenced by Postlethwaite & Netterville.” JEDCO sought the Parish’s assistance in respond *410 ing, but was informed by the Parish that it could not assist JEDCO. JEDCO informed the Times-Picayune that the Parish could not assist in the response and that JEDCO would need to retain legal counsel. On advice of legal counsel, JED-CO, through its custodian of records, declined to release the e-mails on the grounds that they were not public records and/or their disclosure would violate the Constitutional right to privacy of the private citizens named in the e-mails. The Times-Picayune sent a revised request offering to allow |f,JEDCO to redact the names of the “senders” and “recipients” of the e-mails, as long as they were not JED-CO employees. JEDCO again declined to produce the e-mails. The Times-Picayune did not institute proceedings to enforce disclosure.

Public records request to the Parish

Subsequent to JEDCO’s denial, the Times-Picayune issued a public records request to the Parish seeking the e-mails, but did not offer to accept any redactions as it had with JEDCO. In the request, the Times-Picayune stated “[i]t is my understanding that copies of these e-mails are now in the custody of Tommy Fikes, Jefferson Parish internal auditor.” The Parish directed its law department to collect all copies of the e-mails from Fikes and review them. The Parish determined that the e-mails were public records, subject to disclosure, under the Public Records Law. The Parish then advised all known interested parties that it intended to fulfill the public records request.

District court hearing

Shane filed a petition for a temporary restraining order, a preliminary injunction, and a permanent injunction seeking to prohibit JEDCO and the Parish from disclosing the e-mails. A temporary restraining order was granted on February 1, 2018. The Times-Picayune and Broach intervened and by amended petition, Shane added them as defendants. A hearing was held on February 19, 2013, on Shane’s request for a preliminary injunction. The parties stipulated to the affidavits from Gunter and JEDCO’s custodian of records, Dottie Stephenson, and to the introduction of several exhibits. The district court heard testimony from Shane and Broach. After the hearing, the district court found that while the e-mails were private, they became public records as a result of Fikes’ audit. The district court further found that the Parish was a legal custodian of the emails. The district court issued a judgment granting a preliminary injunction for thirty days to |7enable the Parish to comply with the. production and ordered redaction of the names of private citizens in the e-mails.[5] Shane filed a motion for suspen-sive appeal and stay; JEDCO filed a motion for devolutive appeal; and the Parish and the Times-Picayune each filed an Answer to this appeal.
In this appeal, Shane and JEDCO contend that the district court’s judgment should be overturned and the Parish should be enjoined from producing the emails to the Times-Picayune. Shane and JEDCO claim that while the trial court correctly determined that the e-mails were private and did not concern JEDCO business, it incorrectly concluded that these private e-mails were converted into public records when Jefferson Parish’s internal auditor reviewed copies of them. Both claim that the Parish is not the custodian of JEDCO’s e-mails,, and therefore, their release is not authorized by Louisiana’s Public Records Law, and that the district court incorrectly concluded that the Parish became a custodian of the e-mails when its internal auditor reviewed copies of them. *411 Shane and JEDCO further claim that if the district court’s judgment is not overturned, it will have a chilling effect on the privacy rights of public employees and private citizens who communicate with them via e-mail. They challenge the Constitutionality of releasing the names or the content of private e-mails as public records.
The Parish and the Times-Picayune filed Answers to the above appeals. Both contend that the district court erred by ordering the Parish to redact the identities of all persons reasonably believed to be private citizens. The Parish and the Times-Picayune contend that the district court was correct in finding that the emails were public records and that the Parish is a custodian of those e-mails.
J^PUBLIC RECORDS LAW
Article XII, Section 3 of the Louisiana Constitution provides that “No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law.” In 'Title Research Corp. v. Rausch, 450 So.2d 933, 936 (La.1984), the Louisiana Supreme Court held:
The provision of the constitution must be construed liberally in favor of free and unrestricted access to the records, and that access can be denied only when a law, specifically and unequivocally, provides otherwise. Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public’s right to see. To allow otherwise would be an improper and arbitrary restriction on the public’s Constitutional rights.
Louisiana’s Public Records Law codifies and guarantees the Constitutional right of the public to access and examine public records. La. R.S. 44:1 et seq. La. R.S. 44:31B(1) provides that “any person of the age of majority may inspect, copy, or reproduce any public record.” The custodian shall present any public record to any person of the age of majority who so requests. La. R.S. 44:32A. It is the custodian’s burden to prove that a public record is not subject to inspection, copying, or reproduction. La. R.S. 44:31B(3).
La. R.S. 44:lA(2)(a) broadly defines “public records” as follows:
All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristic, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body ..., except as otherwise provided in this Chapter or the Constitution of Louisiana. (Emphasis added).
|flThe Public Records Law was intended to implement the inherent right of the public to be reasonably informed as to the manner, basis, and reasons upon which governmental affairs are conducted. The statutes providing for the examination of public records must be liberally interpreted to extend rather than restrict access to public records. Gannett River States Publishing Corp. v. Monroe City School Bd., 44,231 (La.App. 2 Cir. 4/8/09), 8 So.3d 833, 835, writ denied, 09-1029 (La.6/19/09), 10 *412 So.3d 745. The Louisiana Supreme Court held that the Public Records Law, similar to the Constitutional provision, should be construed liberally in favor of access to public records and any doubt must be resolved in favor of the public’s right to access. Landis v. Moreau, 00-1157 (La.2/21/01), 779 So.2d 691, 694-695.
Any exemption to the Public Records Law is in derogation of the public’s right to be reasonably informed and must be narrowly interpreted. East Bank Consolidated Special Service Fire Protection District v. Crossen, 04-838 (La.App. 5 Cir. 12/28/04), 892 So.2d 666, 669, unit denied, 05-0212 (La.4/1/05), 897 So.2d 608; Times Picayune Pub. Corp. v. Board of Sup’rs of Louisiana State Univ., 02-2551 (La.App. 1 Cir. 5/9/03), 845 So.2d 599, 605, unit denied, 03-1589 (La.9/5/03), 852 So.2d 1044. All exceptions, exemptions, and limitations to the laws pertaining to public records shall be provided for in this Chapter or the Constitution of Louisiana. La. R.S. 44:4.1; Angelo lafrate Const, LLC v. State, DOTD, 03-0892 (La.App. 1 Cir. 5/14/04), 879 So.2d 250, 254, writ denied, 04-1442 (La.9/24/04), 882 So.2d 1131.
Any person who has been denied the right to inspect or copy a public record under the provisions of the Public Records Law may institute proceedings for the | ^issuance of a writ of mandamus, injunc-tive or declaratory relief, attorney’s fees, costs, and damages. La. R.S. 44:35A.
The Constitutional right of access, however, is not unlimited, even without a statute exempting certain documents from public review. Article I, Section 5 of the Louisiana Constitution provides in part, that “[ejvery person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.” [6] (Emphasis added.) Thus, the right to privacy protects certain documents and information from unreasonable disclosure.
In DeSalvo v. State, 624 So.2d 897, 900 (La.1993), cert, denied, 510 U.S. 1117, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994), the Louisiana Supreme Court defined the right of privacy as “the right to be ‘let alone,’ ... and to be free from ‘unnecessary public scrutiny.’ ” The protection afforded by Louisiana Constitution, Art. I, Sec. 5, has prevailed over the public’s right to know and has protected certain documents and information from disclosure. Copeland v. Copeland, 07-0177 (La.10/16/07), 966 So.2d 1040, 1046 (citing Bester v. Louisiana Supreme Court Committee on Bar Admissions, 00-1360 (La.2/21/01), 779 So.2d 715, 720). In defining the limits of the right to privacy, the Louisiana Supreme Court held that “the right of privacy is not absolute; it is qualified by the rights of others ... The right of privacy is also limited by society’s right to be informed about legitimate subjects of public interest.” Plaquemines Parish Com’n Council v. Delta Development Co., Inc., 472 So.2d 560, 567-568 (La.1985) (citing Parish National Bank v. Lane, 397 So.2d 1282, 1286 (La.1981)). In Lane, the Louisiana Supreme Court determined that “[tjhe right of privacy protects varied interests from [ ninvasion. Among the interests protected is the individual’s right to be free from unreasonable intrusion into his seclusion or solitude, or into his private affairs.”
Article I, Section 5 of the Louisiana Constitution applies only where one has a reasonable expectation of privacy in the matter sought to be protected. Capital City Press v. East Baton Rouge Parish *413 Metropolitan Council, 696 So.2d 562, 566 (La.1997). The test for determining whether one has a reasonable expectation of privacy which is Constitutionally protected “is not only whether the person had an actual or subjective expectation of privacy, but also whether that expectation is of a type which society at large is prepared to recognize as being reasonable.” Id. (citing State v. Ragsdale, 381 So.2d 492, 497 (La.1980)); Angelo Iajrate Const., L.L.C., 879 So.2d at 255.
When a request for public records is at issue, the custodian or the individual claiming the privacy right must prove that there is a reasonable expectation of privacy against disclosure of the information to a person entitled to access the public information. If, and only if, a reasonable expectation of privacy is found, the court must weigh or balance the public records disclosure interest against the privacy interest. Beckett v. Serpas, 12-1349 (La.App. 4 Cir. 3/20/13), 112 So.3d 348, 352; Crossen, supra at 670; Angelo Iafrate Const., L.L.C., 879 So.2d at 255 (citing Webb v. City of Shreveport, 371 So.2d 316, 319 (La.App. 2 Cir. 5/4/79), writ denied, 374 So.2d 657 (La.1979)).
DISCUSSION
This proceeding concerns e-mails exchanged between private citizens and former JEDCO employee, Lucien Gunter, regarding political activity, i.e., the Jefferson Parish School Board elections in 2010. The e-mails were located on Gunter’s JEDCO e-mail account and are the subject of the public records request. 112This issue is res nova, as there is no Louisiana case addressing the question of whether e-mails under these circumstances are public records.
Generally, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury if the injunction does not issue. The party must also make a prima facie showing that he will prevail on the merits of the case. Yur-Mar, LLC v. Jefferson Parish Council, 11-669 (La.App. 5 Cir. 3/13/12), 90. So.3d 1137, 1139. La. C.C.P. art. 3601 el seq.
A petitioner is entitled to injunctive relief without the requisite showing of irreparable injury, however, when the conduct sought to be restrained is unconstitutional or unlawful, i.e., when the conduct sought to be enjoined constitutes a violation of a Constitutional right, or a direct violation of a prohibitory law. Jurisich v. Jenkins, 99-0076 (La.10/19/99), 749 So.2d 597, 599.

E-mails

The Public Records Law does not specifically address whether e-mails are included in the definition of public records, or whether e-mails stored on a public computer server are public records. La. R.S. 44:lA(2)(a). For these e-mails to fall within the Public Records Law, it would have to be shown that they were “used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of’ JEDCO’s business. These emails clearly were not used or prepared for JEDCO’s use or performance of its business so as to be fall within the definition of public records.
It is undisputed that the e-mails generated and received by Gunter at his JEDCO e-mail address were maintained on computer equipment owned and controlled by JEDCO. Shane testified that the e-mails were private communications between private individuals about political activity, i.e., the Jefferson Parish School Board elections in 2010. Shane testified that he and |isseveral other businessmen, including some members from CBJ and *414 JBC, decided to take an active role in the 2010 school board elections. Shane further testified that he did not realize that his e-mails were sent to Gunter’s JEDCO e-mail address because Gunter’s name, not his e-mail address, is all that is displayed when Shane sends Gunter an e-mail. Shane also testified that he was aware that JEDCO could not engage in political activities, but he did not believe that there was any such prohibition as to Gunter individually. The e-mails, he said, were strictly between private citizens concerning private political activities and did not have anything to do with the conduct of JED-CO’s business.
Gunter, through his affidavit, stated that the e-mails were private communications and did not have any relation to JEDCO’s business. In an affidavit submitted by JEDCO’s custodian of records, Ms. Stephenson stated that JEDCO did not engage in any political activity.
We agree with the district court’s finding that the e-mails were purely private communications between private citizens concerning private political activity, and that the e-mails had nothing to do with the conduct of JEDCO business. We therefore conclude that the e-mails, even giving a liberal and inclusive construction to the provisions of the Public Records Law, are purely private and do not fall within the definition of “public records” under La. R.S.44:lA(2)(a). The public’s right to access extends only to “public records,” and the e-mails in this case are unequivocally private in nature.
Further, the fact that these writings were in an e-mail format generated by a computer as opposed to other equipment is of no consequence or significance when the determination of a public record is based on a content-driven analysis. Here, the content of the e-mails had nothing to do with the business of JEDCO and are not public records.

_J¿¿Custodian of e-mails

La. R.S. 44:31A also provides that it is the responsibility and duty of the custodian to provide access to public records. A custodian shall present any public record to any person of the age of majority who so requests. La. R.S. 44:S2A. The burden of proving that a public record is not subject to inspection, copying, or reproduction is upon the custodian. La. R.S. 44:31B(3).
Jefferson Parish Code of Ordinances, Section 2-151, designates the custodian of records for JEDCO. It provides:
(a) The department of law shall administer. and be responsible for fulfilling all requests for public records in accordance with applicable federal, state and local laws and regulations.
[[Image here]]
, (b) Notwithstanding the above, the ... Jefferson Parish Economic Development and Port District (JEDCO), ... shall administer and be responsible for fulfilling all requests for public records ...”
(1) All requests for public records shall be administered by the custodian of records for the entity as defined by La. R.S. 44:l(a)(3).
Through the unequivocal language of Section 2-151, the Parish governing authority, the Jefferson Parish Council, delegated the Parish’s authority to administer and fulfill public records requests to JED-CO and its custodian of records. Section 2-151 clearly establishes that JEDCO, not the Parish, was assigned by the Council as the sole custodian of records for JEDCO’s documents. It is undisputed that the emails were located on JEDCO’s computer server. Therefore, the custodian is Ms. Stephenson, JEDCO’s custodian of records.
*415 The parties do not dispute that JEDCO is a custodian of the e-mails. The Parish and the Times-Picayune contend, and the district court agreed, that the Parish was also a custodian of the e-mails through the internal audit authorized -by 1 isthe Parish. Shane and JEDCO argue that review of the e-mails by the internal auditor did not transfer the e-mails to the custody and control of the Parish.
La. R.S. 34:2021B provides that “[t]he Jefferson Parish Council shall have control over and the responsibility for the functions, management, affairs, operation, and administration of said district and may exercise such powers as are necessary to govern such functions, management, affairs, operation, and administration.” Pursuant to this authority, the Jefferson Parish Council authorized its internal auditor to conduct an audit of JEDCO. Furthermore, Jefferson Parish Code of Ordinance, Section 2-162.2(3) provides that the internal auditor is charged with “[p]erforming financial and operational audits and special assignments including the review and evaluation of controls, systems, procedures, contract monitoring and compliance....”
The district court found that since the emails were used in the internal audit, the e-mails were “used to perform a function conducted by order of a public body,” ie., the Jefferson Parish Council, and therefore the e-mails were public records. The district court further found that the emails were in the custody and control of the Parish pursuant to the internal audit and that the Parish was a “proper custodian.”
We conclude that the district court’s reasoning is incorrect. The Jefferson Parish Council was clearly authorized to order the internal audit. However, the Parish failed to establish that it was a “proper custodian” of the records simply because the internal auditor obtained copies of the e-mails for his investigation. Physical possession of a record is not synonymous with the custody or control of it. Kyle v. Perrilloux, 02-1816 (La.App. 1 Cir. 11/7/03), 868 So.2d 27; Alliance for Affordable Energy v. Frick, 96-1763 (La.App. 4 Cir. 5/28/97), 695 So.2d 1126, 1132. Transfer of physical possession by a custodian to another does not result in |1fithe loss of control or status as a custodian. Frick, 695 So.2d at 1133; Times-Picayune Pub. Co. v. Johnson, 94-0790 (La.App. 4 Cir. 10/3/94), 645 So.2d 1174, 1176. The transfer of records for a specific purpose, whether originals or copies, whether by hard copies or electronically, does not constitute a loss of control of the records, nor of the responsibilities or status as custodian.
The Jefferson Parish Code of Ordinances, Section 2-151(b), specifically and unambiguously assigned the authority to administer and to be responsible for public records requests to JEDCO and to JED-CO’s custodian of records. The Parish did not provide for any exceptions or exemptions to this ordinance that would allow the Parish to become a custodian of the records of JEDCO. Accordingly, under the clear language of the ordinance, JEDCO is the sole custodian of records for the emails. The internal auditor’s review, use, or physical possession of the e-mails in his investigation did not transform the Parish into a custodian of the records. Furthermore, the Parish failed to provide sufficient evidence to establish that it was, in fact, the custodian of the records subject to the internal audit.
Because the Parish is not a custodian of the e-mails, it is not authorized by the Public Records Law to release the e-mails in contradiction to the determination by JEDCO that the e-mails are not public records. See In re: Matter Under Investigation, 07-1853 (La.7/1/09), 15 So.3d 972, *416 981. Accordingly, we conclude that the district court erred in finding the Parish was a custodian and in refusing to grant to Shane a preliminary injunction against their release.

Right to Privacy

Shane and JEDCO argue that even if the e-mails are considered public records, Shane has Constitutionally protected rights of privacy and of freedom of | ^association which protect citizens from government intrusion into private matters and outweigh the need for disclosure of the private e-mails.
Shane testified that he has known Gun-ter for approximately 30 years, and that he sent the e-mails to Gunter in his individual capacity as a fellow member of CBJ and JBC. He testified that he regularly communicates with individual members of CBJ and JBC through e-mails and considers the e-mails purely private. Shane further testified that the membership list of CBJ and JBC are private and not disclosed to the public. He testified that individuals who exchanged e-mails had done so as individual private citizens who were interested in supporting certain candidates, and not as an endorsement from JEDCO. Shane testified that the support given to certain candidates was strictly personal and by those individuals, and that he believed all of the communications sent to those involved were private. Further, Shane was unaware that the e-mails were sent to Gunter on his JEDCO account because Gunter’s name and not his e-mail address were displayed on the address line.
Shane further testified that he was not aware that there was any prohibition against Gunter personally engaging in political activities, and he knew JEDCO was prohibited from participating in political activities. Shane testified that the e-mails were personal and private and did not involve any business related to JEDCO.
We conclude that the trial court did not err in finding that Shane, as a private citizen, had a reasonable subjective expectation of privacy. The fact that the e-mails were sent to a large number of individuals involved in political activity does not change Shane’s reasonable subjective expectation of privacy. Shane specifically testified that he believed the recipients of -the e-mails involved in political activity would keep the communication private. He further testified that if one attempts to obtain the e-mails from the other members “[t]hey won’t give it to | iSyou ... they’re private.”' Shane testified that the individuals do not share information with other people.
The United States Supreme Court has repeatedly held that freedom of association is protected by the First Amendment of the United States Constitution. Louisiana Republican Party v. Foster, 96-0314 (La.5/21/96), 674 So.2d 225, 229, citing Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). The protections of the First Amendment are made applicable to the states through the Fourteenth Amendment. Id. The fundamental right of freedom of association protected by the First and Fourteenth Amendments includes the right of persons to engage in partisan political organization. Id. (Citations omitted). There can no longer be any doubt that the right of freedom to associate with others for the common advancement of political beliefs is a form of ‘orderly group activity’ protected by the First and Fourteenth Amendments. Id. Furthermore, the right to freedom of association prohibits compelled disclosure of political groups engaged in political activity. NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Thus, we find that the dis *417 trict court did not err in finding that Shane had an objective expectation of privacy in pursuing his political activities which society at large would be prepared to recognize as reasonable. Shane’s reasonable subjective and objective expectation of privacy must be weighed against the public’s legitimate right to disclosure.
The Parish and the Times-Picayune contend that in balancing these rights, the district court erred in not favoring non-redacted access to the e-mails. They contend that Gunter used his JEDCO email account to engage in political activities which was a prohibited use of public resources for political purposes, and this alleged misconduct was noted in both audit reports. See La. Const. Art. VII, § 14; La. R.S. 18:1465; La. R.S. 42:116B; Jefferson Parish Ordinance, Section 23-_|17(a).ig Thus, they contend that redaction of names of “private citizens” was improper as they may have violated prohibitory law.
In balancing these conflicting rights, the district court found that since Gunter may have violated state statutes or laws, Gun-ter has lost his right to privacy, and the public has a legitimate right to know about his political activities which are the subject of possible violations of law. The district court further noted however, that the public may not have the right to know who else was associated with that activity if they were private citizens, because the private individuals identified in the documents have a Constitutionally protected right to privacy, as well as to freedom of association, and to engage in political advocacy. The district court found that the emails should be disclosed, but only after the Parish redacts the identities of all persons “reasonably believed to have been private citizens.”
We conclude that in balancing conflicting rights, the district court erred in ordering disclosure of e-mails, notwithstanding redaction of names. The district court found that since Gunter may have violated state statutes or law, he had lost any right to privacy, and further, as a public official the public had a legitimate right to know about Gunter’s political activity.
Shane testified and Gunter, through his affidavit, stated that the e-mails were purely private and had nothing to do with the business of JEDCO. The evidence establishes that a group of individuals, as private citizens (including Gunter) decided to become politically active in the school board elections to affect a change. There is no evidence that the individuals who generated or were recipients of the e-mails were acting on behalf of JEDCO. Also, the record reveals, and the district court found, that there are no pending investigations concerning Gunter’s possible misconduct which might justify seizure of the emails. Furthermore, the |20evidence does not support a finding that Gunter was disciplined in any way for misconduct.
Based on the facts in this case, Shane’s right to privacy, coupled with his right of association, heavily outweighs any desire for disclosure of private e-mails. The right to privacy, which is express in the Louisiana Constitution, extends equally to the content of private e-mail messages as it does to the names of other correspondents. Given this protection, redaction of names does not make an otherwise private communication become a public one.
Accordingly, we find that the district court erred in ordering disclosure of the emails, and erred in refusing to grant the preliminary injunction for which Shane had petitioned. For the reasons stated above, the judgment of the trial court is reversed and the preliminary injunction prayed for by Shane, in the form and *418 substance for which he petitioned, is granted. •
This case is remanded for further proceedings consistent with this opinion.
JUDGMENT REVERSED; PRELIMINARY INJUNCTION GRANTED; CASE REMANDED.

. La. R.S. 34:2021 provides that JEDCO “is hereby constituted and is declared to be body *409 politic and political subdivision of the state of Louisiana, as defined in Article VI, Section 44 of the Constitution of Louisiana. Pursuant to Article VI, Sections 19 and 21 of the Constitution of Louisiana, ... [and] is hereby granted all of the rights, powers, privileges, and immunities granted to political subdivisions ...”

.At the time of the public records request, JEDCO's custodian of records was Cynthia Grows.

. The audit does not conclude or suggest that any public funds were used to send or receive the e-mails.

. The Jefferson Parish Council is granted authority to conduct an internal audit of JEDCO pursuant to La. R.S. 34:2021B. The Jefferson Parish Council passed Resolution No. 117985 requesting that the Parish’s internal auditor conduct audits of "agencies which regularly receive funds from Jefferson Parish,” including JEDCO.

. On March 6, 2013, an amended judgment was issued to correct a typographical error.

. This express right of privacy was added by the Constitutional Convention of 1973, effective January 1, 1975. It does not expressly • exist in the United States Constitution.